ERIK S. SYVERSON (SBN 221933)
esyverson@millerbarondess.com
STEVEN T. GEBELIN (SBN 261507)
sgebelin@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiff
Life Bliss Foundation, and
Nithyananda Dhyanapeetam
Temple & Cultural Center

FILED
2013 APR -5 PM 3:03
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LIFE BLISS FOUNDATION, a California Non-Profit Corporation, and NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER. a California Non-Profit Corporation,

Plaintiffs,

v.

SUN TV NETWORK LIMITED, an Indian company; NAKKHEERAN PUBLICATIONS, an Indian company; KALANITHI MARAN, an individual, DHARMARAJA HANSRAJ SAXENA, an individual, RAMADOS AYYAPPAN, an individual, V. RAJA, an individual, S. KANNAN, an individual, R. M. R. RAMESH, an individual, RAMANATHAN GOPAL, an individual, ANNAMALAI KAMARAJ, an individual, NITHYA DHARMANANDA, a.k.a. LENIN KARUPPANNAN, an individual, MOORTHI SHREEDHAR, an individual, KARUPPANNAN KUMAR, an individual, GIRIDHAR LAL PRASAN KUMAR, an individual, AARTHI RAO, an individual, and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 5:13-cv-00393-JGB (SPx)

HON. JESUS G. BERNAL

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT**

**DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiffs, LIFE BLISS FOUNDATION, INC. and NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER, by and through their attorneys, and for a Complaint against the Defendants, state and allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the claim herein pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. This civil action arises under the laws of the United States. Plaintiff is alleging a violation of its rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. §§ 1961 et seq.

2. Venue herein is proper under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff LIFE BLISS FOUNDATION, INC. ("LIFE BLISS") is a non-profit corporation duly organized under the laws of the State of California, and is a resident of the County of San Bernardino, State of California. LIFE BLISS is part of a worldwide movement for meditation and healing that promotes the tenets of Hind/Vedic tradition such as meditation techniques, and spiritual programs as per the teachings of Sri Nithyananda Swami aka "Paramahamsa Nithyananda" (hereinafter "NITHYANANDA"). LIFE BLISS conducts programs across the U.S. and is one of the most, if not the most, well known of all the organizations that spread NITHYANANDA's teachings. It publishes many of NITHYANANDA's books and operates the You Tube site youtube.com/lifeblissfoundation

4. Plaintiff NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER (the "TEMPLE") is a non-profit corporation duly organized under the laws of the State of California, and is a resident of the County of San Bernardino, State of California. The Vedic/Hindu TEMPLE, is one of the largest and most well-known NITHYANANDA temples in the world, offering daily worship services, discourses on sacred Hindu scriptures, meditation, yoga and many other

religious and cultural programs. It attracts visitors from all backgrounds and from all around the world.

5. On information and belief, Defendant SUN TV NETWORK LIMITED ("SUN TV") is a company existing under and by virtue of the laws of the State of Tamil Nadu, India, with a primary place of business in Chennai, Tamil Nadu, India. SUN TV produces video programming for world-wide broadcast, including carriage throughout California and the rest of the United States.

6. On information and belief, Defendant KALANITHI MARAN, ("MARAN") the Chairman and Founder of SUN TV, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

7. On information and belief, Defendant DHARMARAJA HANSRAJ SAXENA, ("SAXENA") an executive of SUN TV, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

8. On information and belief, Defendant RAMADOS AYYAPPAN ("AYYAPPAN") is an employee of SUN TV, and is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

9. On information and belief, Defendant V. RAJA, ("RAJA") the editor for SUN TV, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

10. On information and belief, Defendant S. KANNAN ("KANNAN") the Chief Technical Officer, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

11. On information and belief, Defendant R. M. R. RAMESH ("RAMESH") the editor for Dinakaran, one of SUN TV's daily print and online publications.

12. On information and belief, Defendant NAKKHEERAN PUBLICATIONS ("NAKKHERRAN") is a company existing under and by virtue of the laws of the State of Tamil Nadu, India, with a primary place of business in Chennai, Tamil Nadu, India.

13. On information and belief, Defendant RAMANATHAN GOPAL ("GOPAL"), an executive of NAKKHEERAN, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

14. On information and belief, Defendant ANNAMALAI KAMARAJ, joint editor of NAKKHEERAN, is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

15. On information and belief, Defendant NITHYA DHARMANANDA, a.k.a. LENIN KARUPPANNAN, ("LENIN") is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

16. On information and belief, Defendant MOORTHI SHREEDHAR SHREEDHAR("SHREEDHAR") is a citizen of the Republic of India, and is a resident of the State of Tamil Nadu, India.

17. On information and belief, Defendant KARUPPANNAN KUMAR, ("KUMAR") is the brother of LENIN , a citizen of the Republic of India, and is resident of the State of Tamil Nadu, India.

18. On information and belief, Defendant GIRIDHAR LAL PRASAN KUMAR ("PRASAN") is a citizen of the Republic of India, and is a resident of Kanchipuram in the State of Tamil Nadu, India.

19. Defendant AARTHI RAO ("RAO") is a citizen of the United States, and is a resident of the State of Michigan.

20. Defendant MANICKAM NARAYANAN ("MANICKAM") is a citizen of the United States, and is a resident of the State of Michigan.

21. Plaintiffs do not know the true names or capacities, whether individual, associate, corporate or otherwise, of the Defendants sued herein as DOES 1 through 10, inclusive, and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to state the true names and capacities of these Defendants once Plaintiffs discover this information. Plaintiffs are informed and believe, and based thereon allege, that each Defendant sued herein by a fictitious

name is in some way liable and responsible to Plaintiffs on the facts herein alleged for Plaintiffs' damages. DOES 1 through 25 are referred to collectively herein as "DOE DEFENDANTS."

## CLAIM FOR RELIEF

22. Defendants comprise an enterprise engaged in and the activities of which affect interstate or foreign commerce, to wit: SUN TV, MARAN, SAXENA, AYYAPPAN, RAJA, KANNAN, RAMESH, NAKKHEERAN, GOPAL, KAMARAJ, LENIN, SHREEDHAR, KUMAR, PRASAN, RAO, MANICKAM and DOE DEFENDANTS, (collectively, the "Enterprise") a group of individuals associated in fact to intimidate, harass, influence, and extort funds from NITHYANANDA's followers and associated entities devoted to spreading his teachings including LIFE BLISS and the TEMPLE.

23. Defendants, SUN TV, MARAN, SAXENA, AYYAPPAN, RAJA, KANNAN, RAMESH, NAKKHEERAN, GOPAL, KAMARAJ, LENIN, SHREEDHAR, KUMAR, and PRASAN, RAO, MANICKAM and DOE DEFENDANTS, as persons within the meaning of 18 U.S.C. § 1961(3) and as persons associated with said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

24. The predicate acts which constitute this pattern of racketeering activity include felonious acts of extortion (as defined by California Penal Code § 518, *et seq.*), assault by means of force likely to produce great bodily injury (as defined by California Penal Code § 245), robbery (as defined by California Penal Code § 211, *et seq.*), and kidnapping (as defined by California Penal Code § 207, *et seq.*), as follows:

  a. On or about February 17, 2010, SHREEDHAR spoke via telephone with Sri Nithya Pranananda, assistant to NITHYANANDA, asserting that he had come into possession of a video and photographs that he claimed to be of NITHYANANDA in indecent poses with a woman that appeared to be actress

RANJITHA MENON. ("MENON"). MENON is a celebrated and critically acclaimed actress in India, having appeared in ninety (90) feature films. MENON attended discourses of NITHYANANDA in Indian states of Tamil Nadu and Karnataka. MENON had started directing a documentary on Hinduism which included a feature on NITHYANANDA and subsequently began volunteering at Nithyananda Dhyanapeetam situated in Bidadi, India, eventually becoming a disciple of NITHYANANDA. SHREEDHAR claimed that this video had been surreptitiously recorded by RAO and LENIN by using a hidden device within a private location inside NITHYANANDA's ashram.

        b.      On information and belief, RAO and MANICKAM had purchased the hidden surveillance video recording device in Michigan for the purpose of making secret recordings of NITHYANANDA that would be used to destroy his reputation and international ministry and mission, especially the organizations and ministry in the U.S, and to profit from the distribution of the manipulated recordings. Specifically, PLAINTIFFS are informed that approximately five months before the release of the morphed video in October 2009, MANICKAM had told an Ohio devotee that he would do anything to get rid of NITHYANANDA. During this conversation, MANICKAM admitted to being jealous of NITHYANANDA's status and the substantial time RAO devoted to spreading NITHYANANDA'S teachings in Michigan. MANICKAM was very upset that RAO had any sort of Guru and stated that something "big" needs to be done to get rid of such Gurus. On information and belief, in late January 2010, a few days before the extortion scheme began, MANICKAM subsequently assisted RAO in obtaining a false or anonymous phone number in order to place untraceable calls to LENIN in furtherance of their scheme.

        c.      The secret video from the private location inside NITHYANANDA's ashram was subsequently altered or "morphed" by RAO, MANICKAM, and LENIN and/or their agents to falsely make it appear that MENON was the woman in the video and that she and NITHYANANDA had engaged in

inappropriate acts.

        d.      Because NITHYANANDA's position as a holy man of the Hindu religion and the common man's perception of this position, the release of such video and photographs would cause significant disgrace and great harm to the reputation of NITHYANANDA, his followers and any organization that devoted to showcasing him as a Hindu spiritual leader and to spreading his teachings. SHREEDHAR asserted that he would act as a broker to make certain that the photographs and video were not released to the public, but only if his demands were met.

        e.      Following up on his claims, SHREEDHAR again spoke with Pranananda via telephone on or about February 20, 2010, and proceeded to meet in person with Pranananda and show certain photographs to him on February 21, 2010, which appeared to depict NITHYANANDA in intimate poses with one or more women. SHREEDHAR then asserted that the photos and video were created by and being used by a group (the Enterprise) that would disclose the photos and videos to the public via television, print, and online media distribution channels if their demands were not met, including demands for payment of money. At this meeting, SHREEDHAR disclosed that the Enterprise included both LENIN and RAO, and that LENIN and RAO were involved and responsible for obtaining the photos and video.

        f.      *Extortion #1*. As an initial demand, SHREEDHAR sought five hundred thousand (500,000) rupees in order to prevent the release of the photos and video, but took two hundred thousand (200,000) rupees before leaving that day and insisting that Pranananda and other important members of NITHYANANDA's followers attend a meeting in Chennai in order to discuss the Enterprise's further demands. SHREEDHAR obtained the 200,000 Rupees from Pranananda on February 21, 2010 as a result of the wrongful use of fear, to wit the threat to release the falsified photos and video of NITHYANANDA that would impute disgrace to NITHYANANDA, his followers and any organization that devoted to showcasing him as a Hindu spiritual leader and to spreading his teachings.

g.  On or about February 22, 2010, Sri Nithya Pranananda, Gopal Reeddy Sheelum (a.k.a. Sri Nithya Bhaktananda), and Sri Nithya Sadhananda traveled to the Star City hotel in Chennai in order to meet with SHREEDHAR and other members of the Enterprise.  Sri Nithya Bhaktananda was a director and officer of the LIFE BLISS FOUNDATION, which was known to the Enterprise through at least RAO and LENIN.  Sri Nithya Sadhananda was a director and officer of the TEMPLE, which was known to the Enterprise through at least RAO and LENIN.  RAO was a volunteer teacher for LIFE BLISS FOUNDATION and volunteer at the TEMPLE.  LENIN used to help with the sale of books to the Life Bliss Foundation.

h.  On or about February 23, 2010, SHREEDHAR met with Pranananda, Bhaktananda, and Sadhananda at the hotel in Chennai and made an initial demand for one billion (1,000,000,000) rupees.  After an initial rebuffing, SHREEDHAR lowered the demand to at least six hundred million (600,000,000) rupees, some property, and additional terms to be determined later.  Pranananda, Bhaktananda, and Sadhananda then requested to speak directly with RAO and LENIN regarding the demands and to see the original storage devices containing the photos and video.  SHREEDHAR informed them that a payment would be required before such discussions would take place.  Pranananda, Bhaktananda, and Sadhananda again rebuffed the offer and were threatened with the release of the photos and video, but told that they may have time to reconsider.

i.  Also on or about February 23, 2010, SHREEDHAR met with MENON's representatives and demanded that she separately make an intial payment of 2,500,000 rupees in order to continue their negotiation.  MENON was unable to pay, but instead provided Pranananda with gold jewelry that he subsequently was able to use to raise 500,000 rupees and give the money to SHREEDHAR on her behalf.

j.  On or about February 24, 2010, SHREEDHAR again met personally with Pranananda, Bhaktananda, and Sadhananda at the Star City hotel. SHREEDHAR demanded an immediate payment of six million (6,000,000) rupees as

8
FIRST AMENDED COMPLAINT

an advance against the total to be paid to prevent release of the photos and video of NITHYANANDA.

    k.    In response to a request from Pranananda, Bhaktananda, and Sadhananda, SHREEDHAR telephoned RAO in the United States and LENIN and placed them on loudspeaker to speak with Pranananda, Bhaktananda, and Sadhananda. During this conversation, RAO asserted that in addition to releasing the videos and photos to the media and the internet, if they did not meet the demands for payment that she would file a false criminal complaint for rape against NITHYANANDA, which would further degrade his reputation to the point of destruction. RAO further asserted that her criminal report would additionally allege false crimes against Pranananda, Bhaktananda, and Sadhananda.

    l.    SHREEDHAR then called KAMARAJ and GOPAL of NAKKHEERAN and had them speak to Pranananda, Bhaktananda, and Sadhananda. The NAKKHEERAN representatives threatened to publish the indecent photos of NITHYANANDA in the NAKKHEERAN magazine and on the NAKKHEERAN website if the Enterprise's demands were not met.

    m.    *Felony Assault #1*. On or about February 25, 2010, SHREEDHAR again came to the Star City hotel to meet with Pranananda, Bhaktananda, and Sadhananda, bringing with him KUMAR, LENIN, and four other unknown individuals. These individuals all proceeded to attack and beat Pranananda, Bhaktananda, and Sadhananda, while LENIN asserted that he would destroy NITHYANANDA's image and reputation by releasing the video and photos and by filing false criminal allegations against NITHYANANDA and each of them. LENIN further asserted that he was supported by important politicians and that the only way to prevent further harm would be to meet the Enterprise's demands.

    n.    *Robbery*. Prior to leaving, and after their assault, LENIN and the other individuals stole five hundred thousand (500,000) rupees that were with Pranananda, Bhaktananda, and Sadhananda in the room at the hotel.

o.  On or about February 28, 2010, Pranananda, Bhaktananda, and Sadhananda met with SHREEDHAR to hand over a further two million five hundred thousand (2,500,000) rupees that had been collected from the organizations and followers dedicated to NITHYANANDA.

p.  On the night of March 2, 2010, the Enterprise caused an obscene and highly defamatory film of NITHYANANDA to be telecast on SUN TV's round the clock broadcast along with a commentary that asserted the film showed obscene and illicit activity. This malicious broadcast, subsequent incessant coverage, and the efforts of the Enterprise incited groups and hired mobs to riot and attack the ashrams of NITHYANANDA's followers in Tamil Nadu and Karnataka and cause physical harm to many followers. Multiple followers were beaten by hired mobs and property burned in resultant fires. Many properties were damaged and all programs and social services to the community ceased. SUN TV also disseminated the false images via its daily newspaper, Dinakaran. Dinakaran continuously published the false images in its daily newspaper and the actual morphed video on its website.

q.  In conjunction with the malicious broadcast by SUN TV, NAKKHEERAN magazine, as per previous threats, disseminated the false images of NITHYANANDA and actress MENON via their magazine and by posting reproductions of the false images throughout the State, on practically every bus stand, street pole and store fronts. In addition, the video was made available via the NAKKHEERAN website, on a pay per view basis. This virulent and strategic hate campaign was designed to reach an international audience through the various media employed by the Enterprise, and did reach the interested community around the world, including the many devotees and followers of NITHYANANDA within the U.S. and served by PLAINTIFFS.

r.  *Concurrent Extortion and Attempted Extortion of MENON.* On or about February 20, SHREEDHAR had Pranananda contact MENON via telephone. SHREEDHAR proceeded to demand money from the actress in order to restrain him

and the Enterprise from releasing the photographs which falsely portrayed her in intimate poses with NITHYANANDA, and threatened her with additional materials. SHREEDHAR instructed MENON to participate in meetings to be held in Chennai on February 23, 2010 for further negotiation to prevent the release of the materials. During that meeting, SHREEDHAR demanded that MENON make an initial payment of 2,500,000 rupees in order to continue their negotiation. MENON was unable to pay, but instead provided Pranananda with gold jewelry that he subsequently was able to use to raise 500,000 rupees and give the money to SHREEDHAR on her behalf. On or about March 2, 2010 and following the subsequent broadcast of the video by the Enterprise, a SUN TV employee contacted MENON via telephone to demand that she pay the network money to stop future broadcasts of the video which falsely appeared to show her participating in obscene and illicit activity with NITHYANANDA. The employee further demanded that MENON provide false testimony against NITHYANANDA and his organization in order to benefit SUN TV and that if MENON failed to accede to the demands that SUN TV would use political connections to cause MENON to be arrested and jailed for drug offenses and other serious crimes. The SUN TV employee further threatened that if MENON were to disclose the extortion demand, she and/or her family would be harmed or killed. The SUN TV employee confirmed to MENON that MARAN authorized and ordered the release of the morphed video. The SUN TV employee confirmed that other SUN TV decision makers, including KANNAN and RAMESH, were also threatening to use the reach of SUN TV and its resources (including television networks under MARAN's control and printed publications such as Dinakaran Daily News magazine under RAMESH's control) to reach people worldwide and ruin MENON and NITHYANANDA. He urged her to cooperate with SUN TV's demands, telling her that she didn't "stand a chance" and soon the whole world would see the video and she would have nowhere to hide. Fearing for the safety of her family and herself, MENON fled India the following day.

11
FIRST AMENDED COMPLAINT

s. Also on or about March 2, 2010, and in response to the attacks and the grave damage to the reputation of NITHYANANDA and the organizations, Sri Nithya Atmaprabhananda called SHREEDHAR. SHREEDHAR insisted that Atmaprabhananda travel to Chennai and attempt to resolve the problems created by the release of the altered video.

t. On March 3, 2010, Atmaprabhananda traveled to Chennai and met with SHREEDHAR. At this meeting, SHREEDHAR asserted that he was working together with KUMAR, RAO, LENIN, KAMARAJ and GOPAL on behalf of NAKKHEERAN, and SAXENA and AYYAPPAN of behalf of SUN TV in order to extract large amounts of money from NITHYANANDA's followers and organizations, and that they would destroy them and their reputations if necessary. SHREEDHAR then asserted that AYYAPPAN had the authority to resolve the situation on behalf of the Enterprise and telephoned him for confirmation. AYYAPPAN then instructed SHREEDHAR to bring Atmaprabhananda to his office at Yogesh Pictures.

u. *Attempted Further Extortion of PLAINTIFFS*. At his office, on March 3, 2010, AYYAPPAN told Atmaprabhananda that he would stop the broadcast of the video, the release of photographs by NAKKHEERAN and Dinakaran, and the filing of false criminal reports against NITHYANANDA. In order to do so, AYYAPPAN demanded immediate payment in the amount of six hundred million (600,000,000) rupees from NITHYANANDA and the organizations and followers dedicated to his teachings. When Atmaprabhananda responded that the organizations and followers dedicated to NITHYANANDA did not have enough to pay the demand, AYYAPPAN threatened him with more dangerous consequences in addition to continuing the nonstop airing of the false video. Atmaprabhananda was then allowed to telephone Pranananda from AYYAPPAN's office and asked Pranananda to collect money to pay the demand.

v. *Kidnapping*. In order to enforce his demand, AYYAPPAN

physically forced Atmaprabhananda to stay in his office that night.  Atmaprabhananda was released the following day, March 4, 2010, in order to assist with the collection of money from organizations and devotees, but AYYAPPAN threatened to kill him if he did not return with the demanded money.

   w. *Felony Assault #2*.  On March 5, 2010, while Atmaprabhananda was travelling by car with a devotee and their vehicle was stopped and blocked by an SUV carrying AYYAPPAN.  AYYAPPAN and unknown men from his car forcibly removed Atmaprabhananda from the car he was travelling in, hitting his head against the door and causing him to lose consciousness.  After Atmaprabhananda regained consciousness, he spoke to SAXENA on AYYAPPAN's cell phone.  SAXENA threatened to kill Atmaprabhananda if he did not pay the demanded money.  AYYAPPAN then threatened to make false allegations of drug smuggling against Atmaprabhananda to a nearby police officer if Atmaprabhananda did not pay money immediately.

   x. *Extortion #3*.  In response, Atmaprabhananda had his companion retrieve one million (1,000,000) rupees that Atmaprabhananda had with him and give it to AYYAPPAN out of fear of imprisonment over the false charges and further physical harm.  AYYAPPAN accepted this amount to release Atmaprabhananda, but demanded the payment of another three million (3,000,000) rupees within one week.

   y. RAO and LENIN subsequently filed false criminal charges against NITHYANANDA and many of his closest devotees, including Atmaprabhananda, Pranananda, Bhaktananda, and Sadhananda, alleging crimes including assault, and multiple instances of sexual misconduct across India and the U.S.

   z. *Attempted Further Extortion of PLAINTIFFS*.  On information and belief, on or about March 6, 2011, PRASANNA telephoned a devotee of NITHYANANDA named Hamsananda in order to make a renewed demand of NITHYANANDA's devotees, asking for three hundred and fifty million (350,000,000) rupees in order to have the criminal cases and charges against

NITHYANANDA and his followers dismissed. PRASANA asserted that LENIN and the others in the Enterprise had connections to police and politicians that would be used to reach this result. PRASAN was arrested in connection with these criminal acts in India on December 15, 2011. LENIN was also arrested in this connection with these crimes on March 14, 2012.

26. 25. In televised interviews in late 2012, SAXENA confirmed that SUN TV received the video, had an expert refuse to confirm that the video was genuine, and SUN TV used the video "to exhort money from Nithyananda's men." SAXENA further identified RAJA, the news editor at SUN TV, as having obtained a copy of the video and asserting that the persons depicted were MENON and NITHYANANDA. SAXENA further confirmed that MARAN, KANNAN and RAJA had "joined hands" to act in concert to release the altered video and "to extort money from NITHYANANDA's" followers. SAXENA further admitted that RAJA told him that "We will tear them apart" by putting the video on the TV. SAXENA also confirmed that SUN TV had a practice of manipulating videos and threatening people to fabricate news stories.

26. These numerous acts of racketeering activity, occurring within less than ten (10) years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

27. Plaintiff LIFE BLISS FOUNDATION was injured in its business or property by reason of this violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Defendant's complained of acts, LIFE BLISS FOUNDATION suffered damages, including a loss of reputation and good will towards NITHYANANDA and his teachings, upon which LIFE BLISS FOUNDATION depends. As a direct result of the extortion scheme and related racketeering acts carried out by the Defendants, LIFE BLISS FOUNDATION has seen a dramatic reduction in income from charitable donations, program sales, program revenue and spiritual book sales due to the damage to the reputation of NITHYANANDA and his

14
FIRST AMENDED COMPLAINT

teachings as well as the reputation of its former director and officer Bhaktananda. Moreover, as a result of the extortion scheme, NITHYANANDA's travels from India were severely restricted, preventing LIFE BLISS FOUNDATION from organizing tours within the United States, which were a significant source of income for the LIFE BLISS FOUNDATION prior to 2010. Such damages are uncertain, but in no event less than $50,000,000.

28. By reason of the Defendants' violation of 18 U.S.C. § 1962, Plaintiff LIFE BLISS FOUNDATION is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained or $150,000,000, plus interest thereof at 10 percent ( %) per annum, and a reasonable attorney's fee in connection herewith.

29. Plaintiff NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER was injured in its business or property by reason of this violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Defendant's complained of acts, the TEMPLE suffered damages, including a loss of reputation and good will towards NITHYANANDA and his teachings, upon which the TEMPLE depends. As a direct result of the extortion scheme and related racketeering acts carried out by the Defendants, the TEMPLE has seen a dramatic reduction in income from charitable donations, religious service offering revenue and sacred art sales due to the damage to the reputation of NITHYANANDA and his teachings as well as the reputation of its director and officer Sadhananda. Such damages are uncertain, but in no event less than $30,000,000.

30. By reason of the Defendants' violation of 18 U.S.C. § 1962, Plaintiff NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained or $90,000,000, plus interest thereof at 10 percent ( %) per annum, and a reasonable attorney's fee in connection herewith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs LIFE BLISS FOUNDATION and NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER pray for judgment against Defendants, SUN TV, MARAN, SAXENA, AYYAPPAN, RAJA, KANNAN, RAMESH, NAKKHEERAN, GOPAL, KAMARAJ, LENIN, SHREEDHAR, KUMAR, and PRASAN, RAO, MANICKAM DOE DEFENDANTS, and each of them, as follows:

1. For threefold the damages actually sustained and the costs of suit, in a sum not less than $150,000,000 to LIFE BLISS FOUNDATION and $90,000,000 to NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c) with interest thereon at the rate of 10 percent ( %) per annum;

2. For such other and further relief as the Court may deem appropriate pursuant to 18 U.S.C. § 1964 and

3. For such other and further relief as the Court may deem proper and just in the premises.

4. For trial by jury on all issues so triable.

DATED: April 5, 2013

Respectfully submitted,

MILLER BARONDESS, LLP

By: _____
Erik S. Syverson
Steven T. Gebelin

Attorneys for Plaintiffs
Life Bliss Foundation and
Nithyananda Dhyanapeetam
Temple & Cultural Center

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1, Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED: April 5, 2013

Respectfully submitted,

MILLER BARONDESS, LLP

By: _____
Erik S. Syverson
Steven T. Gebelin

Attorneys for Plaintiff
Life Bliss Foundation, and
Nithyananda Dhyanapeetam
Temple & Cultural Center