1  ERIK S. SYVERSON (State Bar No. 221933)
   esyverson@millerbarondess.com
2  SCOTT M. LESOWITZ (State Bar No. 261759)
   slesowitz@millerbarondess.com
3  STEVEN T. GEBELIN (State Bar No. 261507)
   sgebelin@millerbarondess.com
4  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:  (310) 552-4400
6  Facsimile:   (310) 552-8400

   Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 LIFE BLISS FOUNDATION, a California    | CASE NO. 5:13-cv-00393-VAP (SPx)
   Non-Profit Corporation; and
12 NITHYANANDA DHYANAPEETAM              | [Assigned to the Honorable Virginia A.
   TEMPLE & CULTURAL CENTER, a           | Phillips, District Judge, and the
13 California Non-Profit Corporation,     | Honorable Sheri Pym, Magistrate Judge]

14              Plaintiffs,               | **MEMORANDUM OF POINTS AND**
                                          | **AUTHORITIES FOR PLAINTIFFS**
15 v.                                     | **LIFE BLISS FOUNDATION AND**
                                          | **NITHYANANDA DHYANAPEETAM**
16 SUN TV NETWORK LIMITED, an            | **TEMPLE & CULTURAL CENTER'S**
   Indian company; NAKKHEERAN            | **MOTION TO COMPEL**
17 PUBLICATIONS, an Indian company;      | **JURISDICTIONAL DISCOVERY**
   KALANITHI MARAN, an individual;       | **AND SUPPORTING**
18 DHARMARAJA HANSRAJ SAXENA,            | **DECLARATIONS**
   an individual; RAMADOS AYYAPPAN,      | [Notice of Motion and Motion to Compel
19 an individual; V. RAJA, an individual; S. | Jurisdictional Discovery,
   KANNAN, an individual; R. M. R.        | Declarations of Scott M. Lesowitz,
20 RAMESH, an individual;                | Gopal Reddy Sheelum (aka Sri Nithya
   RAMANATHAN GOPAL, an individual;      | Bhaktananda), Sri Nithya
21 ANNAMALAI KAMARAJ, an                 | Sadhananda, Sri Nithya Prananada, and
   individual; NITHYA DHARMANANDA,       | Sri Nithya Hamsananda, filed
22 a.k.a. LENIN KARUPPANNAN, an          | concurrently herewith]
   individual; MOORTHI SHREEDHAR, an     |
23 individual; KARUPPANNAN KUMAR,        |
   an individual; GIRIDHAR LAL PRASAN    | Action Filed: March 1, 2013
24 KUMAR, an individual; AARTHI RAO,     | FAC Filed:  April 5, 2013
   an individual; MANICKAM               | Trial Date:      TBD
25 NARAYANAN, an individual; and DOES    |
   1 through 10, inclusive,              |
26

27              Defendants.

28

165106.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF CONTENTS

Page

I.   INTRODUCTORY STATEMENT ........................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 1

A.   The Parties ...................................................................................................... 2

B.   The Underlying Allegations ........................................................................... 2

C.   Additional Facts pertaining to Jurisdiction ................................................... 6

1.   Sun TV's Admissions regarding Broadcasting in the United States ............... 6

2.   Sun TV Broadcasts Eight YouTube Channels in California ............................ 7

3.   Sun TV owns Dinakaran ................................................................................... 7

4.   Co-conspirators ................................................................................................ 8

III. STANDARD OF REVIEW ................................................................................. 8

A.   The Showing Required for Jurisdictional Discovery is Low .......................... 8

B.   The Showing Required to Defeat a Motion to Dismiss is Low ...................... 9

C.   The Court may Exercise Jurisdiction and Venue so Long as Defendants have
Minimum Contacts with the United States as a Whole ................................ 10

IV.  PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY ........... 10

A.   Plaintiffs are Entitled to Discovery regarding Sun TV's
Business in the United States ........................................................................ 10

1.   Sun TV Broadcasts in the United States, but the Record is Incomplete
and Distorted ................................................................................................. 10

2.   Sun TV's Broadcasting is Relevant regarding Specific Jurisdiction ............. 11

3.   Sun TV's Broadcasting is Relevant regarding General Jurisdiction ............. 12

4.   Sun TV's Broadcasting is Relevant regarding Forum Non-Conveniens ........ 13

B.   Plaintiffs are Entitled to Discovery regarding Dinakaran ............................. 13

C.   Plaintiffs are entitled to Discovery regarding the relationship
between the Sun TV Defendants and the non-Sun TV Defendants ................ 13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

i

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Blanco v. Carigulf Lines,*
(5th Cir.1980) 632 F.2d 656 ..................................................................9

*Carijano v. Occidental Petroleum Corp.,*
(9th Cir. 2011) 643 F.3d 1216 ...............................................................9

*Cheng v. Boeing Co.,*
(9th Cir. 1983) 708 F.2d 1406 ...............................................................9

*Gator.Com Corp. v. L.L. Bean, Inc.,*
(9th Cir. 2003) 341 F.3d 1072 .............................................................12

*Getz v. Boeing Co.,*
(9th Cir. 2011) 654 F.3d 852 ...............................................................10

*Go-Video, Inc. v. Akai Elec. Co.,* Ltd.,
(9th Cir. 1989) 885 F.2d 1406 .............................................................10

*Harris Rutsky & Co. Ins. Services, Inc. v.*
*Bell & Clements Ltd.,*
(9th Cir. 2003) 328 F.3d 1122 ...............................................................9

*Hedrick v. Daiko Shoji Co., Ltd., Osaka,*
(1983)715 F.2d 1355 ...........................................................................14

*In re Western States Wholesale Natural Gas Antitrust Litigation,*
(9th Cir. 2013) 715 F.3d 716 .................................................................9

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football*
*Club Ltd. Partnership,*
(7th Cir. 1994) 34 F.3d 410 .................................................................12

*Laub v. U.S. Dept. of Interior,*
(9th Cir. 2003) 342 F.3d 1080 .............................................................14

*Lekkas v. Liberian M/V Caledonia,*
(4th Cir.1971) 443 F.2d 10 ....................................................................9

*Metropolitan Life Ins. Co. v. Neaves,*
(9th Cir. 1990) 912 F.2d 1062 .............................................................12

*Oppenheimer Fund, Inc. v. Sanders*
(1978) 437 U.S. 340 ...........................................................................8, 9

*Panavision Intern., L.P. v. Toeppen*
(9th Cir. 1998) 141 F.3d 1316 .............................................................11

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

165106.1

**TABLE OF AUTHORITIES**
**(CONT'D)**

Page

*Siderman de Blake v. Republic of Argentina,*
(9th Cir. 1992) 965 F.2d 699 .................................................................. 13

*Sizova v. Nat. Institute of Standards & Technology,*
(10th Cir. 2002) 282 F.3d 1320 ................................................................. 9

*Texas Dept. of Community Affairs v. Burdine,*
(1981) 450 U.S. 248 ................................................................................... 8

*Washington Shoe Co. v. A-Z Sporting Goods Inc.,*
(9th Cir. 2012) 704 F.3d 668 .................................................................. 14

*World-Wide Volkswagen Corp. v. Woodson,*
(1980) 444 U.S. 286 ................................................................................ 14

**Statutes**

28 U.S.C §§ Sections 1391(b)(3).............................................................. 10

Fed. Rule of Civ. Proc. 26 .......................................................................... 8

Fed. Rules of Civ. Proc., 4(k)(2) .............................................................. 10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

165106.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**Memorandum of Points and Authorities**

## I.    Introductory Statement

On September 25, 2013, Defendants Sun TV Network Limited ("Sun TV"), Kalanithi Maran, S. Kannan, and R.M.R. Ramesh (collectively, the "Sun TV Defendants") filed motions to dismiss for lack of personal jurisdiction and for forum non-conveniens (collectively, the "Motions"). Maran, Kannan, and Ramesh (collectively, the "Personal Sun TV Defendants") all filed declarations in support of these motions (Docket Entries 25, 27, and 29, collectively, the "Declarations.") The Declarations, and their use and incorporation into the Motions, have raised significant factual questions and issues regarding jurisdiction and forum non-conveniens.

The declaration S. Kannan submitted on behalf of himself and Sun TV contains misleading statements. Kannan admits that Sun TV stations are broadcast in the United States. But his declaration claims that Sun TV only broadcasts indirectly through contractual relationships with entities it has no control over. However, Sun TV's 2012-2013 annual report filed with the National Stock Exchange of India states that Sun TV, along with its subsidiaries, operates television channels to viewers in the United States. In another place, the annual report simply states that Sun TV itself, without mentioning subsidiaries, operates television channels to viewers in the United States. The annual report says nothing about Sun TV broadcasting in the United States indirectly through contractual relationships with unrelated entities.[1] And earlier in 2010, Sun TV announced a push to expand its broadcasting into North America.

## II.    Factual Background[2]

This case centers on the Defendants' conspiracy to extort funds from the Plaintiffs, both of whom are California corporations. While this case involves

---

[1] All of this is true regarding Sun TV's 2009-2010 Annual Report, as well. This annual report covers March of 2010, when Sun TV initially broadcast the explicit video discussed herein.

[2] The declarations cited herein contain additional facts not present in the Complaint. Plaintiffs plan on seeking to amend the Complaint to incorporate these additional facts following the Court's ruling on this motion.

1  disparaging, false, and negative coverage of Sri Nithyananda Swami ("Swami"), this

2  coverage is not at the core of this lawsuit.

3        A.    The Parties

4        On April 5, 2013, the Plaintiffs, Life Bliss Foundation ("Life Bliss") and the

5  Nithyananda Dhyanapeetam Temple & Cultural Center (the "Temple") filed the First

6  Amended Complaint (the "Complaint").  Life Bliss and the Temple are two of the

7  largest and most well-known promoters of the teachings of Swami.  (Attached

8  Declaration of Gopal Reddy Sheelum [a.k.a.  Sri Nithya Bhaktananda] ["Sheelum

9  Declaration"], ¶ 4; and Attached Declaration of Sri Nithya Sadhananda ["Sadhananda

10 Declaration"], ¶ 4.)  Swami is a religious leader and the originator of a unique spiritual

11 system focusing on Hindu scriptures, meditation, and yoga.  (*Id.*)

12       Defendant Sun TV Network Limited ("Sun TV" or "Sun Network") is a

13 producer and disseminator of broadcast content in India and the United States.

14 (Docket Entry 25, Declaration of S. Kannan ["Kannan Declaration"], ¶¶ 4, 15.)

15 Defendants S. Kannan, and Kalanithi Maran are both high level executives of Sun TV.

16 Defendant Kannan is the Chief Technical Officer of Sun TV.  (Kannan Declaration, ¶¶

17 1-2.)  Defendant Maran is the Chairman and Managing Director of Sun TV.  (Docket

18 Entry 27, Maran Declaration, ¶ 1.)  Defendant R.M.R. Ramesh is the Managing

19 Director of the *Dinakaran* daily newspaper.  (Docket Entry 29, Ramesh Declaration, ¶

20 1, attached as Exhibit 3.)  As discussed more fully below, *Dinakaran* is a Sun TV

21 publication.

22       B.    The Underlying Allegations

23       On February 17, 2010, Defendant Shreedhar informed Swami's assistant that he

24 had an altered video of Swami engaging in sexual activity with a famous Indian

25 actress (the "Video").  (Attached Declaration of Sri Nithya Pranananda ["Pranananda

26 Declaration"], ¶¶ 2-3.).  Defendants Rao and Manickam, had purchased a video

27 recording device in Michigan in order to secretly record Swami; they altered the

28 Video to make it look like Swami was having sexual relations with the famous actress.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

2

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  (Complaint, ¶¶ 24b.)  Defendants Rao and Lenin both had been long-time volunteers

2  for the Plaintiffs.  (Sadhananda Declaration, ¶ 10.)

3       On February 17, 2010, and during a subsequent meeting, Shreedhar informed

4  Swami's assistant that Shreedhar was working on behalf of a group that was

5  demanding a large extortion payment in exchange for the Video not being released.

6  (Pranananda Declaration, ¶ 4.)  This group included all of the Sun TV Defendants and

7  Defendant Saxena (another Sun TV executive).  *Id.*  Shreedhar said that they were

8  aware that Swami had organizations in the United States with significant funds to pay

9  for the Video not being released.  (*Id.*)  Shreedhar specifically requested that Life

10  Bliss and the Temple be part of the negotiations for payment.  (*Id.*)  In response,

11  representatives from each Plaintiff traveled to India.  These representatives were

12  named Sadhananda and Sheelum.

13       On February 23, 2010, Defendant Shreedhar connected Sadhananda (the

14  Temple's representative) with Defendant Saxena on the telephone.  (Sadhananda

15  Declaration, ¶ 9.)  Saxena was an executive with Sun TV.  (*Id.*)  Saxena said that he

16  was speaking on behalf of Sun TV.  (*Id.*)  He said that he had heard of Life Bliss and

17  the Temple, had heard that they were based in California, and heard that they had a

18  large amount of U.S. funds.  (*Id.*)  Saxena stated that Sun TV demanded that followers

19  of Swami, including Life Bliss and the Temple, pay for Sun TV not to air the Video.

20  (*Id.*)  Saxena said that Defendant Maran, the Chairman of Sun TV and the Sun Group,

21  knew of the extortion plan regarding the Video, and had approved of it.  (*Id.*)

22       On February 24, 2010, Defendant Shreedhar met with Sadhananda and Sheelum

23  again.  (*Id.*, ¶¶ 10-11.)  Defendant Rao, who joined the meeting via telephone from the

24  United States, stated that she was working with Sun TV.  (*Id.*)  She demanded that the

25  Plaintiffs' pay extortion money, or else they would release the Video and file false

26  criminal complaints.  (*Id.*)  Defendant Lenin also joined in the meeting on the

27  telephone and also said that he was working on behalf of Sun TV and echoed the

28  extortion demands.  (*Id.*)

3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

In early 2010, prior to the Video being presented to Pranananda, Rao had called Sadhananda while he was in the California and warned him that there was damaging information about the Temple that would surface.  (*Id.*, ¶ 5.)  She warned that highly-connected individuals would demand money, and that payment should be made to them.  (*Id.*)  At the time, Sadhananda was confused about what she was referring to.  (*Id.*)

On February 25, 2010, Defendants Shreedhar, Lenin, Kumar, and four unknown individuals battered Sadhananda and Sheelum (the Plaintiffs' representatives) in furtherance of their extortion plot.  (Sheelum Declaration, ¶ 9.)  They also stole funds earmarked for the Plaintiffs.  (*Id.*)

On February 28, 2010, the Sadhananda and Sheelum (the Plaintiffs' representatives) gave Shreedhar money in the hopes of stalling the release of the Video.  (*Id.*, ¶ 10.)  Much of these funds were earmarked for the Plaintiffs.  (*Id.*)

On March 2, 2010, having not been paid anywhere close to the amount demanded, the Defendants caused clips and images from the Video to be played on Sun TV stations.   (Sadhananda Declaration, ¶¶ 13-14.)  The Defendants also caused *Dinakaran* magazine (a Sun TV publication) to publish images from the Video.  (*Id.*)

As part of the extortion plot, in March and April of 2010, Defendants Rao and Lenin caused false criminal charges to be brought against the Plaintiffs' representatives: Sadhananda and Sheelum.  (Sadhananda Declaration ¶ 16; Sheelum Declaration, ¶ 11.)

Between December of 2010 and March of 2011, Defendant Prasanna and Defendant Lenin telephoned Hamsananda--a devotee of Swami associated with Life Bliss and the Temple--on numerous occasions.  (Attached Declaration of Sri Nithya Hamsananda, ¶¶ 3-4.)  They stated that they represented Sun TV, Defendant Maran (Chairman of Sun TV), and Defendant Saxena (a Sun TV executive).  (*Id.*)  They demanded large amounts of money in exchange for Sun TV stopping its continual negative coverage of Swami.  (*Id.*)  Prasanna relayed their desire for American money

4

165106.1

1  from American followers of Swami; Prasanna specifically mentioned Life Bliss and

2  the Temple.  (*Id.*)

3       At a press-conference regarding Lenin and Prasanna's activity, conducted by

4  Hamsananda, a reporter from Sun TV assaulted Hamsananda and threatened that

5  Swami's organizations would be shut down if Hamsananda continued to speak out

6  against Sun TV.  (*Id.*, ¶ 6.)  The Temple was indeed shut down for a period including

7  April of 2010.  Later, Hamsananda received a phone call from a Sun TV employee

8  that mentioned wanting payments of money.  (*Id.*)  Lenin and Prasanna were arrested

9  due to their actions against Hamsananda.  (*Id.*, ¶ 5.)

10       In a televised interview in late 2012, Defendant Saxena, a high-level executive

11  of Sun TV during the time period of the extortion, admitted that Sun TV had used the

12  Video to extort money from Swami's followers.  (Complaint, ¶ 25.)  Saxena stated

13  that Defendants Maran, Kannan (both executives of Sun TV), and Raja (the editor of

14  *Dinakaran*), had acted in concert to extort funds from Swami's followers and to

15  release the Video.  (*Id.*)

16       Starting in mid-2010 and continuing into early 2013, on numerous occasions,

17  people approached Sheelum, an executive of Life Bliss, and a Hindu Monk, and told

18  him that if Life Bliss and the Temple paid Sun TV, that Sun TV would stop airing

19  negative, damaging, and false coverage of Swami.  (Sheelum Declaration, ¶ 12.)

20  These incidents occurred in California and India.  (*Id.*)

21       Starting after the release of the Video, and continuing until the present time,

22  Sadhananda, an executive of the Temple, received phone calls in which unidentified

23  people threatened him if he did not stop pursuing criminal and civil charges against

24  Sun TV.  (Sadhananda Declaration, ¶ 17.)

25       On many occasions, various people involved in extorting the funds from Life

26  Bliss and the Temple stated that they and the Sun TV Defendants wanted payment to

27  occur outside of India, in order to hide the transactions from Indian authorities.

28  (Sadhananda Declaration ¶¶, 7 and 9; Hamsananda Declaration ¶ 4.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

5

C.    Additional Facts pertaining to Jurisdiction

   1.    Sun TV's Admissions regarding Broadcasting in the United States

Defendant Kannan's declaration was written on behalf of both himself and Sun TV.  (Kannan Declaration, ¶ 3.)  Kannan's Declaration states that "Companies in other countries, including the United States, contract with Sun TV to re-transmit in other countries programs broadcast by Sun TV in Chennai, India…"  (*Id.*, ¶ 15.)  There is no information in the declaration as to what the terms of these contracts are, how much money Sun TV earns from these contracts, who Sun TV has made such contracts with, how many of such contracts exist, how many viewers in the United States watch Sun TV channels, whether any of these contracts are held by Sun TV subsidiaries, whether subsidiaries of Sun TV have offices in the United States to service these channels, where Sun TV is broadcasted into California, etc.  For example, Sun TV is broadcast on Dish Network, yet there is no information in the Declaration regarding Dish Network.

(http://www.usdish.com/packages_detail.html?id=384)

   Kannan's declaration appears to mischaracterize Sun TV's broadcasting activity in the United States.  Kannan's declaration states in conclusory fashion that Sun TV has no control over the companies that re-transmit their channels, and that Sun TV does not broadcast "directly" into the United States.  (*Id.*, ¶¶ 14-16.)  However, Sun TV's 2012-2013 annual report to the National Stock Exchange of India states that Sun TV and its subsidiaries "operate[] television channels…to viewers in…[the] United States."  (Declaration of Scott M. Lesowitz ["Lesowitz Declaration"], ¶ 2 & Exhibit A [2012-2013 Annual Report excerpts].)  Earlier, the same report simply states that Sun TV operates television channels to viewers in the United States; it does not say that this broadcasting involves subsidiaries.  (*Id.* at 48.)  Sun TV's 2009-10 annual report contains virtually the identical language as the 2012-2013 annual report.  (Lesowitz Declaration, ¶ 2 & Exhibit B [2009-2010 Annual Report excerpts].)  Neither report

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  states that Sun TV broadcasts its channels into the United States indirectly through

2  contractual relationships with unrelated entities.  (Lesowitz Declaration, ¶ 2.)

3      Sun TV announced in a press release in 2010 that "Sun TV Network, the

4  leading Indian media corporation has appointed Global Media Management LLC and

5  World Media Connect LLC to manage and grow its distribution and advertising

6  business, respectively in North America."  (Lesowitz Declaration, ¶ 3 & Exhibit C

7  [press release].).  The purpose of this effort was "to diverge and expand into the North

8  American markets by increasing subscription base and consecutively growing

9  advertising revenues."  *Id.*  Global Media Management LLC and World Media

10  Connect LLC are not mentioned in the Declarations.

11      2.    Sun TV Broadcasts Eight YouTube Channels in California

12      Sun TV's main, corporate, English-language website contains prominent links

13  to Sun TV's main YouTube station.  (http://www.sunnetwork.in/; Lesowitz

14  Declaration, ¶ 4 & Exhibit D [screenshot]).  Sun TV maintains eight YouTube

15  stations.  (http://www.youtube.com/user/Suntvtamizh/about; Lesowitz Declaration, ¶¶

16  4-6 & Exhibit E [screenshot].)   There are hundreds, and likely thousands, of videos

17  being broadcast from Sun TV's YouTube station's.  (Lesowitz Declaration, ¶ 5).

18  Many of these videos have been viewed by over 100,000 people.  (*Id.*)  Sun TV's site

19  has received over 80 million page views.  (*Id.*, ¶ 6& Exhibit E.)  These YouTube

20  stations are not mentioned in any of the Declarations.

21      Google Inc. owns YouTube.  (*Id.*, ¶ 7 & Exhibit F [Google 2012 Annual Report

22  at 3, 5-6]).  Google is headquartered in California and incorporated in Delaware.

23  (*Id.* at 3.)

24      3.    Sun TV owns *Dinakaran*

25      R.M.R. Ramesh's declaration states that "Kal Publications owns *Dinakaran*, a

26  daily newspaper.  Neither *Dinakaran* nor Kal Publications is owned by Sun TV

27  Network Limited."  (Exhibit 3, ¶ 3.)

28

165106.1

However, Plaintiffs have uncovered numerous media reports that Defendant Maran's Sun Network purchased *Dinakaran* in 2005. *See, e.g.,* http://www.business-standard.com/article/companies/dinakaran-s-days-in-the-sun-106083101002_1.html; http://www.thehindubusinessline.com/todays-paper/tp-economy/sun-network-to-relaunch-tamil-daily-dinakaran/article2180668.ece; http://economictimes.indiatimes.com/sun-network-buys-tamil-daily-dinakaran/articleshow/1144377.cms.  Bloomberg Business Week states that *Dinakaran* is currently a subsidiary of Sun Network. http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=140630900.  (For printouts of all of these articles, *see* Lesowitz Declaration  ¶ 8 & Exhibit G.)

### 4.  Co-conspirators

In none of the Declarations do the Personal Sun TV Defendants deny having been in contact with the other co-conspirators named in the Complaint, such as Defendants Shreedhar, Rao, Lenin, Manickam, Kamaraj, Gopal, and Kumar (the "non-Sun TV Defendants").  The non-Sun TV Defendants are not mentioned in the Declarations.

## III.  STANDARD OF REVIEW

### A.  The Showing Required for Jurisdictional Discovery is Low

Discovery is to be granted liberally.  *See, e.g., Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("liberal discovery rules [are] applicable to any civil suit in federal court").

Pursuant to Federal Rule of Civil Procedure 26, when a defendant challenges the court's jurisdiction or venue, the plaintiff may obtain jurisdictional discovery.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, n. 13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues").  The showing required to obtain jurisdictional discovery is low.  Jurisdictional discovery is required if such discovery "might well demonstrate facts

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

8

sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1135 (9th Cir. 2003). *See also Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion…[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant.").

The traditional discovery rules also permit plaintiffs to obtain discovery in order to oppose a motion to dismiss for forum non-conveniens. *Oppenheimer Fund, Inc*, 437 U.S.at 351 n.13 ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues") *Cheng v. Boeing Co*., 708 F.2d 1406, 1412 (9th Cir. 1983) ("plaintiffs correctly assert that *forum non conveniens* questions are often an appropriate subject for directed discovery, *Lekkas v. Liberian M/V Caledonia*, 443 F.2d 10 (4th Cir.1971), that a plaintiff ordinarily should not be required to rely on a movant's affidavits on a motion to dismiss, and that a plaintiff should be able to conduct directed discovery on the issues raised by the motion, *Blanco v. Carigulf Lines*, 632 F.2d 656, 658 (5th Cir.1980)"). As Life Bliss and the Temple are both California residents, California is presumed to be a convenient forum. *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1227 (9th Cir. 2011) ("When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient.").

B.    The Showing Required to Defeat a Motion to Dismiss is Low

The plaintiff's burden in defeating a motion to dismiss for lack or jurisdiction is low, and all disputed facts must be decided in the plaintiff's favor. *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 741 (9th Cir. 2013) ("[T]he plaintiff must make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. For the purposes of deciding whether a prima facie

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

165106.1

1    showing has been made, the court resolves all disputed facts in favor of the plaintiff.")

2    (Internal quotations and citations omitted.).

3          C.      The Court may Exercise Jurisdiction and Venue so Long as Defendants

4                  have Minimum Contacts with the United States as a Whole

5          The Sun TV Defendants are all Indian nationals.  Thus, they may be sued in any

6    district court in the United States, so long as they have "minimum contacts" with the

7    United States.  Federal Rule of Civil Procedure 4(k)(2); *Getz v. Boeing Co.*, 654 F.3d

8    852, 859 (9th Cir. 2011) ("Whereas foreign defendants lacking sufficient contacts

9    with any single state could previously avoid responsibility for civil violations of our

10   federal laws, the revised Rule allows federal courts to exercise jurisdiction over these

11   defendants, subject only to the limitations of the Fifth Amendment's due process

12   clause."); 28 United States Code Sections 1391(b)(3) and (d); *Go-Video, Inc. v. Akai*

13   *Elec. Co.*, Ltd., 885 F.2d 1406 (9th Cir. 1989) (affirming the exercise of personal

14   jurisdiction and venue over a Japanese defendant based on its contacts with the United

15   States as a whole).

16   **IV.   PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY**

17         A.      Plaintiffs are Entitled to Discovery regarding Sun TV's Business in the

18                 United States

19                 1.      Sun TV Broadcasts in the United States, but the Record is

20                         Incomplete and Distorted

21         Defendant Kannan's declaration admits that Sun TV has entered into

22   agreements to broadcast its channels into the United States.  (Kannan Declaration, ¶

23   15.)  There is no specific information in Kannan's declaration about these agreements

24   or the extent of Sun TV's broadcasting in the United States.  The declaration does not

25   even state which companies Sun TV has broadcasting relationships with in the United

26   States.  The declaration merely states in conclusory fashion that Sun TV has no

27   control over the companies that re-transmit its channels, and that it does not broadcast

28   "directly" into the United States.  (*Id.*, ¶¶ 14-16.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

10

1    But in 2010, Sun TV announced an aggressive strategy to expand the

2    broadcasting of its channels into the North American market through Global Media

3    Management LLC and World Media Connect LLC.  (Lesowitz Declaration ¶ 3 &

4    Exhibit C).  None of the Declarations mention this push into the North American

5    market, Global Media Management LLC, or World Media Connect LLC.  Without

6    additional discovery, Plaintiffs have no means of knowing important information such

7    as what type of contractual relationship Sun TV has with these two LLCs, where these

8    two LLCs operate, where these LLCs were formed, if these two LLCs are subsidiaries

9    of Sun TV, or if the Personal Sun TV Defendants hold positions with these two LLCs.

10    And Kannan's Declaration is misleading.  As laid out above, Kannan's

11    Declaration claims that Sun TV only broadcasts in the United States indirectly

12    through retransmission contracts with entities it has no control over.  But Sun TV's

13    annual reports state that Sun TV directly operates channels being viewed in the United

14    States.  (*Compare* Kannan Declaration, ¶¶ 14-16 and Lesowitz Declaration, ¶ 2 &

15    Exhibits A & B.)  Thus, Sun TV cannot claim that it had no control over the Video

16    being aired in the United States, or that it does not have direct business connections

17    with the United States.  Plaintiffs should be allowed to confront Kannan regarding the

18    discrepancy between Sun TV's annual reports and his declaration.

19    Kannan's declaration further omits that Sun TV operates eight YouTube

20    channels.  Google Inc., which is headquartered in California and incorporated in

21    Delaware, owns and operates YouTube.  *See* Exhibit F [Google 2012 Annual Report

22    at ¶¶ 3, 5-6].  These YouTube channels are not addressed in the Declarations.

23           2.    Sun TV's Broadcasting is Relevant regarding Specific Jurisdiction

24    If any of the Sun TV Defendants caused the Video to be broadcast in the United

25    States as part of the extortion efforts, this would be additional grounds for specific

26    jurisdiction.  In *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1319-22 (9th Cir.

27    1998), the Ninth Circuit held that jurisdiction was properly exercised in California

28    over an Illinois defendant who merely (1) from Illinois, registered the internet domain

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

11

165106.1

name of a well-known California corporation, and (2) sent a letter from Illinois to the California corporation demanding $13,000 for the internet domain name. *See also Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) (California district court properly exercised jurisdiction over an out-of-state defendant who mailed materials into California that were meant to defraud an insurance company).

3.   Sun TV's Broadcasting is Relevant regarding General Jurisdiction

If Sun TV's broadcasting activity in the United States is significant enough in the United States, general jurisdiction may be appropriate.  It is axiomatic that systematic and continuous business contacts with a forum may justify general jurisdiction. *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1076 (9th Cir. 2003) ("General jurisdiction exists when there are 'substantial' or 'continuous and systematic' contacts with the forum state, even if the cause of action is unrelated to those contacts.")

Continuous broadcasting in the United States alone would justify the exercise of general jurisdiction.  In an opinion authored by Chief Judge Posner, the Seventh Circuit Court of Appeal held that broadcasting into a state constitutes entering the state. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir. 1994).[3]

Sun TV's eight YouTube stations alone could very well warrant general jurisdiction in California.  In *L.L. Bean,* 341 F.3d at 1079-80, the Ninth Circuit held that a California district court could exercise general jurisdiction over L.L. Bean, Inc., an out-of-state corporation, merely based on L.L. Bean's interactive website.  This was because L.L. Bean was clearly doing business over its website and because their business contacts with California through this website were "substantial or continuous and systematic." *Id.*  Here, Sun TV is operating eight interactive broadcast channels via YouTube, a Delaware corporation headquartered in California.  There are

---

[3] While the case dealt with specific jurisdiction, there is no reason that the principal of broadcasting in a forum being equal to entering the forum would not also apply to general jurisdiction.

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of the Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

12

165106.1

1   advertisements on the webpages for these channels and on the individual videos that

2   air from the channels. The main site alone has received over 80 million page views.

3   (Lesowitz Declaration ¶¶ 5-6 and Exhibit E.)

4           4.     Sun TV's Broadcasting is Relevant regarding Forum Non-

5                Conveniens

6   California/American witnesses may be needed at trial regarding the

7   broadcasting of the Video in California/United States on traditional television stations

8   and on YouTube.  Discovery of such witnesses would be relevant for the forum non-

9   conveniens analysis.

10       B.    Plaintiffs are Entitled to Discovery regarding *Dinakaran*

11   Defendant Ramesh's declaration attempts to distance himself from liability and

12   jurisdiction by claiming that *Dinakaran* (his publication) is not associated with Sun

13   TV. (Exhibit C, ¶ 3, ["Kal Publications owns *Dinakaran*, a daily newspaper.  Neither

14   *Dinakaran* nor Kal Publications is owned by Sun TV Network Limited."])  However,

15   Plaintiffs have located numerous media reports that Defendant Sun Network

16   purchased *Dinkaran* in 2005 and still owns *Dinakaran*.  (Lesowitz Declaration ¶ 8 and

17   Exhibit G.)  Plaintiffs are entitled to depose Defendant Ramesh to oblige him to

18   answer for these numerous media reports and clarify the relationship between

19   *Dinakaran* and Sun Network.  *Siderman de Blake v. Republic of Argentina*, 965 F.2d

20   699, 713 (9th Cir. 1992) ("To the extent that the jurisdictional facts are disputed on

21   remand, the parties should be allowed to conduct discovery for the limited purpose of

22   establishing jurisdictional facts before the claims can be dismissed.")

23       C.    Plaintiffs are entitled to Discovery regarding the relationship between the

24             Sun TV Defendants and the non-Sun TV Defendants

25   The Declarations are silent regarding the non-Sun TV Defendants.  The

26   Declarations do not state whether the Personal Sun TV Defendants were in contact

27   with the non-Sun TV Defendants during the relevant time period, what relationships

28   they had with the non-Sun TV Defendants, or whether they had ever met the non-Sun

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

13

1    TV Defendants.  The Plaintiffs are entitled to discovery on this issue in order to

2    develop a full record.  *See Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1092-93 (9th

3    Cir. 2003) (it was an abuse of discretion to deny requested jurisdictional discovery on

4    a factual issue for which the record was incomplete).

5           Jurisdiction would apply against the Sun TV Defendants if Plaintiffs were

6    merely to show sufficient facts that the Sun TV Defendants encouraged other

7    individuals to extort money, knowing that the victims likely included Americans.

8    This would be true even if the Sun TV Defendants did not know the exact identity of

9    which Americans they were targeting.

10          In *Hedrick v. Daiko Shoji Co., Ltd., Osaka*, the plaintiff was a worker who was

11   injured by a defective part in Oregon.  *Hedrick v. Daiko Shoji Co., Ltd., Osaka*, 715

12   F.2d 1355, 1356 (1983).  The defendant was the Japanese company who manufactured

13   the defective part in Japan.  *Id.*  The defendant had no contacts with Oregon other than

14   that it expected that the parts it manufactured would be sold in Oregon.  *Id.*  There was

15   no connection between the defendant and the plaintiff prior to the lawsuit.  *Id.* at

16   1356-59.  Nonetheless, the Ninth Circuit overturned the district court and held that

17   there was personal jurisdiction over the defendant.  *Id.* at 1358-59.  *See also World-*

18   *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ("The forum State

19   does not exceed its powers under the Due Process Clause if it asserts personal

20   jurisdiction over a corporation that delivers its products into the stream of commerce

21   with the expectation that they will be purchased by consumers in the forum State.")

22          It does not matter that the Defendants performed their injurious acts from India.

23   *Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012)*

24   ("courts may exercise personal jurisdiction over a defendant who engages in an

25   intentional act that causes harm in the forum state, even if that act takes place outside

26   of the forum state").

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

14

Thus, the Plaintiffs are entitled to depositions of the Sun TV Defendants, as well as the other requested discovery, in order to develop a full record that may very well lead to the exercise of jurisdiction over the Sun TV Defendants.

Respectfully Submitted,

DATED: November 5, 2013          MILLER BARONDESS, LLP

By:    /s/ *Scott M. Lesowitz*

Erik S. Syverson
Scott M. Lesowitz
Steven T. Gebelin
Attorneys for Plaintiffs Life Bliss Foundation and Nithyananda Dhyanapeetam Temple & Cultural Center

MEMORANDUM IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

165106.1