1  DAN MARMALEFSKY (CA SBN 95477)
   DMarmalefsky@mofo.com
2  PURVI G. PATEL (CA SBN 270702)
   PPatel@mofo.com
3  MORRISON & FOERSTER LLP
   707 Wilshire Blvd., Suite 6000
4  Los Angeles, California 90017-3543
   Telephone: 213.892.5200
5  Facsimile: 213.892.5454

6
   Attorneys for Defendants
7  SUN TV NETWORK LIMITED, KALANITHI
   MARAN, S. KANNAN, R.M.R. RAMESH

8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA

11 LIFE BLISS FOUNDATION, a California      Case No. 5:13-cv-00393-VAP-SPx
   Non-Profit Corporation; and
12 NITHYANANDA DHYANAPEETAM
   TEMPLE & CULTURAL CENTER, a             DEFENDANTS SUN TV NETWORK
13 California Non-Profit Corporation,       LIMITED, KALANITHI MARAN,
                                            S. KANNAN, AND R.M.R.
14              Plaintiffs,                 RAMESH'S OPPOSITION TO
                                            PLAINTIFFS' MOTION TO
15        v.                                COMPEL JURISDICTIONAL
                                            DISCOVERY
16 SUN TV NETWORK LIMITED, an
   Indian company; NAKKHEERAN
17 PUBLICATIONS, an Indian company;         Date:  December 9, 2013
   KALANITHI MARAN, an individual;          Time:  2:00 p.m.
18 DHARMARAJA HANSRAJ SAXENA,               Courtroom:  2
   an individual; RAMADOS AYYAPPAN,
19 an individual; V. RAJA, an individual;   Hon. Virginia A. Phillips
   S. KANNAN, an individual; R. M. R.
20 RAMESH, an individual;
   RAMANATHAN GOPAL, an individual;
21 ANNAMALAI KAMARAJ, an individual;
   NITHYA DHARMANANDA, a.k.a.
22 LENIN KARUPPANNAN, an individual;
   MOORTHI SHREEDHAR, an individual;
23 KARUPPANNAN KUMAR, an
   individual; GIRDHAR LAL PRASAN
24 KUMAR, an individual; AARTHI RAO,
   an individual; MANICKAM
25 NARAYANAN, an individual; and DOES
   1 through 10, inclusive,
26
                Defendants.
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.   RELEVANT BACKGROUND .............................................................. 3

    A.    Relevant Factual Background ..................................................... 3

    B.    Plaintiffs' New Allegations ........................................................ 3

    C.    Plaintiffs' Discovery Requests .................................................. 5

III.  PLAINTIFFS' REQUEST TO OBTAIN "*FORUM NON CONVENIENS*" DISCOVERY SHOULD BE DENIED .............................. 6

    A.    Discovery Is Not Necessary for the Court to Decide Defendants' Motion to Dismiss for *Forum Non Conveniens* .................................. 7

    B.    The Court Should Decide the *Forum Non Conveniens* Motion Before Permitting Any Discovery Regarding Personal Jurisdiction ................................................................................ 8

IV.  PLAINTIFFS' REQUEST TO OBTAIN JURISDICTIONAL DISCOVERY SHOULD BE DENIED .................................................... 9

    A.    Plaintiffs Have Failed to Show That Jurisdictional Discovery from Maran, Kannan, and Ramesh Is Warranted .............................. 10

        1.    Open-Ended Videotaped Depositions and Unspecified Interrogatories Are Not Called For on the Present Record ...... 11

        2.    Documents Regarding Contacts with Co-Defendants Are Irrelevant ............................................................................. 12

    B.    Plaintiffs Have Failed to Show That Jurisdictional Discovery from Sun TV is Warranted ................................................................ 14

        1.    Discovery regarding broadcasting of Sun TV channels into the United States is unlikely to reveal contacts sufficient to establish jurisdiction ................................................ 14

        2.    Evidence That Sun TV Operates YouTube Channels Featuring Indian-Language Television Programs Provides No Colorable Basis for Personal Jurisdiction ........................... 20

        3.    Discovery Regarding Ownership of *Dinakaran* or Kal Publications Is Irrelevant to the Jurisdictional Inquiry ........... 22

V.   PLAINTIFFS DO NOT REQUIRE ADDITIONAL TIME TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS ...................... 24

VI.  CONCLUSION ................................................................................. 25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

CASES

4

*Agron, Inc. v. Chien-Lu Lin,*
  No. CV 03-05872,

5

  2004 WL 555377 (C.D. Cal. Mar. 16, 2004) ........................................ 4

6

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,
  No. SACV 07-846-MRP ANX,

7

8

  2008 WL 7071464 (C.D. Cal. Jan. 17, 2008) .................................... 18

9

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ............................................................ 21

10

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) .................................................... 17, 18

11

12

*Barantsevich v. VTB Bank,*
  No. CV 12-08993,

13

  2013 WL 3188178 (C.D. Cal. May 29, 2013)............................... 10, 17

14

15

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir.2008) .................................................... 10, 23

16

17

*Bourjaily v. United States*,
  483 U.S. 171, 107 S. Ct. 2775 (1987) ............................................. 12

18

19

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ........................................................... 24

20

21

*Cal. Software, Inc. v. Reliability Research, Inc.*,
  631 F. Supp. 1356 (C.D. Cal. 1986).......................................... 17, 18

22

23

*Cargnani v. Pewag Austria G.m.b.H*,
  No. CIV. S-05-0133 WBS JFM,

24

  2007 WL 415992 (E.D. Cal. Feb. 5, 2007) ....................................... 20

25

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) ........................................................... 6

26

27

28

*Copperfield v. Cogedipresse*,
  26 Media L. Rep. (BNA) 1185, 1188-89 (C.D. Cal. Nov. 3, 1997) ................. 13

*Coremetrics, Inc. v. Atomic Park.com, LLC*,
  370 F. Supp. 2d 1013 (N.D. Cal. 2005).............................................................. 21

*Costa v. Keppel Singmarine Dockyard PTE, Ltd.*,
  No. CV 01-11015MMM,
  2003 WL 24242419 (C.D. Cal. Apr. 24, 2003)...................................................... 18

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010).............................................................. 12

*Ellis v. Fortune Seas, Ltd.*,
  175 F.R.D. 308 (S.D. Ind. 1997) ...................................................................... 10

*Fitzgerald v. Texaco, Inc.*,
  521 F.2d 448 (2d Cir. 1975) ......................................................................... 6, 7

*Gator.com Corp. v. L.L. Bean, Inc.*,
  341 F.3d 1072 (9th Cir. 2003) ........................................................................ 22

*Gehling v. St. George's Sch. of Med., Ltd.*,
  773 F.2d 539 (3d Cir. 1985) ........................................................................... 21

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ......................................................................... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  __ U.S. __, 131 S. Ct. 2846 (2011) .................................................................. 18

*Holland America Line v. Wartsila North America*,
  485 F.3d 450 (9th Cir. 2007) ..................................................................... 17, 21

*In re Dynamic Random Access Memory Antitrust Litig.*,
  Nos. C 02-1486 PJH,
  2005 WL 2988715 (N.D. Cal. Nov. 7, 2005)...................................................... 14

*Kipperman v. McCone*,
  422 F. Supp. 860 (N.D. Cal. 1976)................................................................... 14

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010)............................................................................ 13

iii

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ............................................................. 7

*Martinez v. Manheim Cent. California*,
  No. 1:10-cv-01511-SKO,
  2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) .............................. 10, 20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ...................................... 18, 19, 21

*Mitan v. Feeney*,
  497 F. Supp. 2d 1113 (C.D. Cal. 2007) ...................................... 10

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  No. 02 Civ. 1499,
  2003 WL 1484269 (S.D.N.Y. Mar. 21, 2003) ............................... 6

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) ...................................................... 19

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ................................................ 21

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................. 9, 21

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .......................................................... 6, 8

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*,
  582 F.3d 1083 (9th Cir. 2009) ................................................ 9

*Rano v. Sipa Press, Inc.*,
  987 F.2d 580 (9th Cir. 1993) ........................................... 16, 17

*Reddy v. Litton Indus.*,
  912 F.2d 291 (9th Cir. 1990) .................................................. 4

*Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*,
  No. SACV 13-320-JST ANX,
  2013 WL 5420984 (C.D. Cal. Sept. 17, 2013) ...................... 19, 21

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................. 19, 23

iv

*Sinochem International Company v. International Shipping Corporation*
  549 U.S. 422 (2007) ........................................................................ 8, 9

*Terracom v. Valley Nat'l Bank,*
  49 F.3d 555 (9th Cir. 1995) ............................................................ 10

*U.S. ex rel. Giles v. Sardie,*
  191 F. Supp. 2d 1117 (C.D. Cal. 2000) .......................................... 11

*Underwager v. Channel 9 Austl.,*
  69 F.3d 361 (9th Cir. 1995) ............................................................ 14

*Videx, Inc. v. Micro Enhanced Tech., Inc.,*
  No. 6:12-cv-0065,
  2012 WL 1597380 (D. Or. May 4, 2012) ........................................ 16

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
  556 F.2d 406 (9th Cir.1977) ............................................................ 20

**OTHER AUTHORITIES**

**Federal Rules of Civil Procedure**

Rule 4(k)(2) ........................................................................................ 17

Rule 12(b)(6) ...................................................................................... 1

Rule 30(b)(6) ..................................................................................... 5, 20

1    **I.    INTRODUCTION**

2         Pending before the Court are Defendants Sun TV Network Limited,

3 Kalanithi Maran, S. Kannan, and R.M.R. Ramesh's motions to dismiss based on

4 lack of personal jurisdiction, *forum non conveniens* and improper venue, and failure

5 to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Instead of

6 responding to these motions on the previously agreed-upon briefing schedule

7 (which gave Plaintiffs six weeks to oppose), Plaintiffs claim they require

8 documents and depositions (in India) to address Defendants' *forum non conveniens*

9 and personal jurisdiction challenges.[2]  Plaintiffs, however, have not shown they are

10 entitled to such discovery.

11         As a threshold matter, the Court should rule on the pending *forum non*

12 *conveniens* motion — for which no discovery is legitimately sought — before

13 permitting any jurisdictional discovery or ruling on the personal jurisdiction

14 motion.  Indeed, Plaintiffs fail to identify any missing information that will assist

15 the Court in deciding whether India, instead of California, is the proper forum for

16 this litigation.  The ties to **India** are overwhelming: Defendants are an **Indian** TV

17 conglomerate and three **Indian** nationals; Plaintiffs' witnesses are located in **India**;

18 the alleged extortion scheme occurred in **India;** and the purported leverage for the

19 extortion scheme involved video footage of an **Indian** guru engaged in intimate

20 acts with an **Indian** actress in his ashram in **India**.

21         The Court can also rule on Defendants' personal jurisdiction motions.

22 Plaintiffs have not shown that they can supplement their jurisdictional allegations

23 through discovery in a manner that would have any impact on the outcome of the

24

25       [1] For the Court's convenience, a glossary of the various individuals named in

26 the Corrected First Amended Complaint ("FAC") and referenced throughout
Defendants' Motions to Dismiss (ECF Nos. 17, 23, 24, 26, 28, 30, 31) and this

27 opposition is attached as **Exhibit 1**.
      [2] Briefing on Defendants' Motions to Dismiss was deferred, pending

28 resolution of Plaintiffs' Motion to Compel Jurisdictional Discovery.  (ECF No. 50.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' JURISDICTIONAL DISCOVERY MOTION

1  pending jurisdiction motions.  There is no basis, therefore, to subject Defendants,

2  who are all based in India, to the burden and expense of such discovery.

3       Plaintiffs direct a fraction of their discovery requests to Maran, Kannan, and

4  Ramesh, leaving the majority for Sun TV.  Maran, Kannan, and Ramesh are Indian

5  nationals for whom Plaintiffs have not shown a colorable basis for jurisdiction.

6  Plaintiffs offer no disputed facts or issues that justify jurisdictional discovery as to

7  these defendants individually.  As to Sun TV, Plaintiffs seek information they

8  incorrectly believe is germane to the personal jurisdiction inquiry.  Much of the Sun

9  TV discovery is merits-based and little of it is narrowly tailored for the stated

10 purpose.  For example, requests concerning Sun TV's (indirect) broadcasting into

11 the United States and purported ownership of *Dinakaran* or Kal Publications are

12 wholly unnecessary.  None will yield relevant information to determine whether

13 Sun TV is subject to the Court's jurisdiction under Ninth Circuit law.  Importantly,

14 Plaintiffs have adduced no evidence that contradicts any of the declarations

15 submitted by Defendants, such that a deep dive into Sun TV's forum contacts

16 would be warranted.

17      The jurisdictional discovery Plaintiffs seek will significantly and

18 unnecessarily delay the resolution of Defendants' Motions to Dismiss, which

19 Defendants filed on September 25, 2013.[3]  Plaintiffs have demonstrated that they

20 have sufficient information to oppose the Motions.  The Court should deny

21 Plaintiffs' Motion to Compel Jurisdictional Discovery and hear Defendants'

22 Motions to Dismiss on the currently scheduled date.

23

24

25

26     ---

        [3] Among other things, Plaintiffs seek five videotaped depositions in India,
27 but their attorneys have very limited availability to conduct those depositions.
   (Declaration of Purvi G. Patel in Support of Defendants' Opposition to Plaintiffs'
28 Motion to Compel and Defendants' Request for Judicial Notice ¶¶ 3-4, Ex. A.)

2

## II.    RELEVANT BACKGROUND

### A.    Relevant Factual Background

Plaintiffs Life Bliss Foundation and Nithyananda Dhyanapeetam Temple & Cultural Center initiated this RICO action against 16 defendants seeking damages for an alleged decline in donations, sales, and other revenue.[4]  Plaintiffs attempt to attribute these damages to an elaborate extortion scheme aimed at revealing video footage of Indian guru Sri Nithyananda Swami's indiscretions with female disciple Ranjitha Menon, a famous Indian actress (the "Swami Sex Scandal").[5]  (FAC ¶¶ 22-24, ECF No. 8.)  The alleged extortion scheme was perpetrated almost exclusively by Indian citizens in India.  (*Id.* ¶¶ 5-18, 24a-w.)  With the exception of two defendants (Narayanan and Rao) — who are not affiliated with Defendants — each named defendant is a citizen of India (*id.* ¶¶ 5-18).

As is plain from the FAC, the epicenter of Plaintiffs' allegations is India.  The FAC contains no allegations of California contact, and very limited contacts regarding the United States.  Indeed, the only relation this case has to California appears to be Plaintiffs' California citizenship (*id.* ¶¶ 3, 4), though Plaintiffs' own witnesses are located in India.  (Pranananda Dec. at 2:4, ECF No. 53-10; Sadhananda Dec. at 5:3, ECF No. 53-11; Bhaktananda Dec. at 4:5, ECF No. 53-12; Hamsananda Dec. at 2:7, ECF No. 53-13.)

### B.    Plaintiffs' New Allegations

Plaintiffs attempt to expand the allegations in the FAC through four

---

[4] Plaintiffs assert a single claim for violation of the Racketeer Influenced and Corrupt Organizations Act.

[5] More than two years ago, on March 4, 2011, Swami and Plaintiffs sued Sun TV in Riverside County Superior Court asserting causes of action for "Defamation/Libel and Slander Per Se" and Invasion of Privacy.  (Request for Judicial Notice, Complaint, Ex. 1, ECF No 33.)  Sun TV removed the case to the Central District of California, Eastern Division.  (*Life Bliss Foundation v. Sun TV, Sun Network*, No. 5:11-cv-01573-VAP-SP (filed Oct. 3, 2011) (the "First Case").)  Plaintiffs and Swami sought damages in the First Case similar to the claims in this action based on allegations that in March 2010, Sun TV broadcast the Swami Sex Scandal.  (*See* First Case Compl. ¶ 30.)

1   declarations submitted by Prananananda (Swami's assistant in India), Sadhananda

2   (director and officer of Temple), Bhaktananda (director and officer of Life Bliss),

3   and Hamsananda (Swami devotee in India).  (ECF Nos. 53-10–53-12.)[6]  Among the

4   new allegations are allegations regarding purported targeting of Plaintiffs and

5   California or the United States.  (*See, e.g.*, Pl. MPA 3:7-12, 3:16-18, 4:22-25, 5:16-

6   20, 5:25-28, ECF No. 53-1.)[7]

7        Plaintiffs now allege that the supposed enterprise targeted Plaintiffs

8   specifically because the enterprise sought "U.S. funds," desired "American money,"

9   "wanted payment to come from outside of India, in order to hide funds from Indian

10  authorities," and "wanted American funds to be wired from America, in order for

11  the funds not to be traced to India and to Sun TV."  (Pl. MPA 3:17-18, 4:28, 5:1;

12  Bhaktananda Dec. ¶ 6; Sadhananda Dec. ¶ 7.)  These allegations cannot be given

13  credence because they are internally inconsistent, irreconcilable with the FAC, and

14  contradicted by Defendants' sworn declarations, as set forth below:

15       •   Sadhananda and Bhaktananda traveled ***to India*** to discuss the video

16  footage of Swami's sexual indiscretions because members of the purported

17

18       [6] Plaintiffs state that they plan to seek leave to amend the FAC to incorporate

19  these facts following the Court's ruling on their Motion to Compel Jurisdictional
    Discovery.  (Pl. MPA n.2.)  Plaintiffs should not be permitted to do so.  As set forth

20  below, many of these facts are inconsistent with facts previously alleged.  *See
    Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to

21  amend should be liberally granted, the amended complaint may only allege other
    facts consistent with the challenged pleading." (internal quotation marks omitted));

22  *Agron, Inc. v. Chien-Lu Lin*, No. CV 03-05872, 2004 WL 555377, at *10 n.77

23  (C.D. Cal. Mar. 16, 2004) ("amended complaints must allege facts consistent with
    prior complaints").  They are also based on hearsay, which is inherently unreliable.

24  (*See* Defendants' Objections to Declarations Submitted in Support of Plaintiffs'
    Motion to Compel Jurisdictional Discovery, filed concurrently herewith.)

25       [7] Plaintiffs also pepper references to Sun TV into their pre-March 2, 2010

26  allegations regarding the extortion-related activities of the enterprise (*see, e.g.*, Pl.
    MPA 3:6-7; 13-21), again, all based on inadmissible hearsay (*see* Objections to

27  Declarations).  Plaintiffs' FAC did not contain any allegations about Sun TV prior
    to March 2, 2010.  (Defendants' Motion to Dismiss for Failure to State a Claim at

28  5:14-6:19, ECF No. 30.)

enterprise demanded as much (Sadhananda Dec. ¶¶ 6-7; Bhaktananda Dec. ¶¶ 5-6);

- Not a single alleged extortion demand or payment was made in U.S. dollars; all demands and payments were made in Indian rupees (FAC ¶¶ 24f, h, i, j, n, o, r, u, x, z);

- A wire transfer from the United States to India is more likely to leave a trail than cash payments in Indian rupees (*see* Sadhananda Dec. ¶ 7);

- Defendants all declare under penalty of perjury that they did not have knowledge of Plaintiffs before the filing of the First Case or this action (Kannan Dec. ¶¶ 26, 45, ECF No. 25; Ramesh Dec. ¶ 19, ECF No. 29; Maran Dec. ¶ 18, ECF No. 27).

Plaintiffs' new allegations that Defendants targeted Plaintiffs specifically and wanted payment to occur outside of India are simply not true.

### C.    Plaintiffs' Discovery Requests

The vast majority of discovery Plaintiffs seek is directed at Sun TV's personal jurisdiction challenge.  Plaintiffs, however, also purport to seek discovery as to the *forum non conveniens* motion and Maran, Kannan, and Ramesh individually.  To the extent possible, the chart below summarizes Plaintiffs' discovery requests by issue ("PJ" for personal jurisdiction and "FNC" for *forum non conveniens*) and Defendant to which each request is purportedly directed.

| Discovery Request | Issue | Defendant(s) |
|---|---|---|
| Videotaped depositions of (no subject matter specified) | ? | Maran, Kannan, Ramesh |
| Videotaped Rule 30(b)(6) deposition of Sun TV employee most knowledgeable about Sun TV's YouTube channels | PJ | Sun TV |
| Videotaped Rule 30(b)(6) deposition of Sun TV employee most knowledgeable about the broadcasting of Sun TV channels in the United States | PJ | Sun TV |
| Production of all contracts involving the broadcasting of Sun TV channels into the | PJ | Sun TV |

| Discovery Request | Issue | Defendant(s) |
|---|---|---|
| United States | | |
| Production of all documents regarding contacts or associations with any co-defendant | ? | Sun TV, Maran, Kannan, and Ramesh |
| Production of documents related to the ownership of *Dinakaran* or Kal Publications | ? | Ramesh and Sun TV |
| Production of documents showing that managers or board members of Sun TV are also board members of Kal Publications | ? | Ramesh and Sun TV |
| Production of records relating to business contacts Sun TV has had with California or the United States | PJ | Sun TV |
| Interrogatories (unspecified) | PJ/FNC | Sun TV, Maran, Kannan, and Ramesh |

(Pl. Mot., Req. Nos. (1)-(9), ECF No. 53.)

### III.   PLAINTIFFS' REQUEST TO OBTAIN "*FORUM NON CONVENIENS*" DISCOVERY SHOULD BE DENIED

Discovery regarding a *forum non conveniens* motion to dismiss should be permitted only when the court requires additional information to rule on the motion. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983) (upholding denial of discovery regarding *forum non conveniens* because the court had "enough information" to "balance the parties' interests"); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). Importantly, discovery is not warranted even if it "might" provide the court with "more detail." *Cheng*, 708 F.2d at 1412.

A motion to dismiss for *forum non conveniens* "does not call for a detailed development of the entire case," and discovery, if permitted, must remain "limited to the location of important sources of proof." *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 n.3 (2d Cir. 1975). Moreover, any discovery sought must be narrowly tailored and obtained in the least burdensome manner. *Norex Petroleum Ltd. v. Access Indus., Inc.*, No. 02 Civ. 1499, 2003 WL 1484269, at *2 (S.D.N.Y. Mar. 21, 2003) (rejecting discovery requests that were not "reasonably and narrowly

focused" on matters relevant to defendants' motion to dismiss for *forum non conveniens*); *Fitzgerald*, 521 F.2d at 451, 454 (affirming denial of deposition because deposition testimony would be duplicative of information obtained through interrogatories and document requests).

### A. Discovery Is Not Necessary for the Court to Decide Defendants' Motion to Dismiss for *Forum Non Conveniens*

To decide the *forum non conveniens* motion, the Court considers: (1) whether an adequate alternative forum exists; (2) whether choice of law supports dismissal; and (3) whether the balance of private and public interest factors favors dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001).

Plaintiffs have not identified any additional information the Court might require to rule on Defendants' *forum non conveniens* motion. As best as Defendants can tell, only one of Plaintiffs' nine discovery requests pertains to *forum non conveniens*: "interrogatories relating to questions regarding . . . forum non-conveniens." (Pl. Mot. 3.) Plaintiffs do not provide any detail regarding what questions they have regarding this issue.[8] Irrespective of Plaintiffs' shortcomings, it is hard to imagine how interrogatories regarding *forum non conveniens* would add anything new to the record. The allegations in Plaintiffs' FAC alone provide sufficient information for the Court to conclude this case belongs in India. (FAC ¶¶ 24a-w.) Moreover, Plaintiffs' witnesses and Defendants are all located in India. (Pranananda Dec. 2:4; Sadhananda Dec. 5:3; Bhaktananda Dec. 4:5; Hamsananda Dec. 2:7; Maran Dec. ¶ 5; Kannan Dec. ¶¶ 4, 32; Ramesh Dec. ¶ 6.) Defendants have also demonstrated that Indian courts provide an adequate alternative forum, choice of law issues favor adjudicating this case in India, and the balance of private and public factors weighs heavily towards dismissal. (Sundaresan Dec. ¶¶ 9, 17,

---

[8] To the extent Plaintiffs' request for videotaped depositions of Maran, Kannan, and Ramesh is related to *forum non conveniens* discovery, Plaintiffs have not indicated as much. Nor have Plaintiffs demonstrated that such burdensome discovery is justified. (*See* Section IV.A.1.)

1  18, 19, 20, ECF No. 32; Maran Dec. ¶¶ 19, 20, 22; Kannan Dec. ¶¶ 47, 48, 51;

2  Ramesh Dec. ¶¶ 22, 23, 25.)

3      Separate from the interrogatories, Plaintiffs contend discovery regarding Sun

4  TV's broadcasting is relevant to the *forum non conveniens* inquiry.  (Pl. MPA 13:4-

5  9.)  In support, Plaintiffs state that "California/American witnesses may be needed

6  ***at trial*** regarding the broadcasting of the Video in California/United States on

7  traditional television stations and on YouTube."  (*Id.* (emphasis added).)  Plaintiffs'

8  logic is difficult to follow; it is not readily apparent why discovery of such

9  witnesses is relevant to the *forum non conveniens* analysis.  Nor is it apparent why,

10  if media coverage regarding the Swami Sex Scandal "is not the core of this lawsuit"

11  (Pl. MPA 2:2), such witnesses would be needed at trial.

12      In assessing whether discovery is needed to decide *forum non conveniens*, the

13  ultimate question is whether the evidence submitted in support of such a motion

14  provides "enough information to enable the District Court to balance the parties'

15  interests."  *Piper*, 454 U.S. at 258.  Plaintiffs have failed to show that the Court

16  lacks sufficient information (1) to determine the adequacy of India as a forum,

17  (2) to analyze and apply choice of law principles, and (3) to balance the parties'

18  interests.  These points are relevant to determining the answer to the same question:

19  what connection exists between this controversy and this forum?  As Defendants set

20  forth in their *forum non conveniens* motion, the answer is ***none***.  (ECF No. 31.)[9]

21
        **B.    The Court Should Decide the *Forum Non Conveniens***
22              **Motion Before Permitting Any Discovery Regarding**
                **Personal Jurisdiction**

23      The Supreme Court concluded in *Sinochem International Company v.*

24  *International Shipping Corporation* that "a court need *not* resolve whether it has

25  _____

26      [9] Even if Plaintiffs had identified relevant areas for discovery, Plaintiffs
    would still need to show good cause to justify the expense and delay of conducting
27  discovery in connection with the *forum non conveniens* motion to dismiss.  *See,*
    *e.g., Piper*, 454 U.S. at 258 ("[r]equiring extensive investigation" in connection
28  with a *forum non conveniens* motion "would defeat the purpose" of the doctrine).

8

1    . . . personal jurisdiction over the defendant if it determines that, in any event, a

2    foreign tribunal is plainly the more suitable arbiter of the merits of the case." 549

3    U.S. 422, 425 (2007) (emphasis added).  In so holding, the Court explained that this

4    approach was particularly appropriate in the interest of judicial economy where

5    deciding a *forum non conveniens* motion will save time and effort.  *Id*. at 436

6    (Where "personal jurisdiction is difficult to determine[] and *forum non conveniens*

7    considerations weigh heavily in favor of dismissal, the court properly takes the less

8    burdensome course.").

9         Here, Plaintiffs' intrusive and burdensome document and deposition

10   discovery — all of which will need to occur in India — imposes a significant

11   burden on Defendants and the Court.  Putting aside all of the reasons why Plaintiffs

12   should not be permitted to seek discovery, the fact that Plaintiffs have not limited

13   the requests in scope to matters pertinent to *forum non conveniens* or personal

14   jurisdiction foreshadows discovery disputes to come.  Deciding Defendants' *forum*

15   *non conveniens* motion before permitting jurisdictional discovery will conserve the

16   resources of the parties and the Court because a finding that India, rather than

17   California, is the appropriate forum for this lawsuit will render Plaintiffs' discovery

18   requests and Defendants' other motions moot.  *See Provincial Gov't of Marinduque*

19   *v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (explaining that the

20   district court stayed all jurisdictional discovery, ordered briefing regarding *forum*

21   *non conveniens*, and then dismissed the case in favor of a Canadian forum).

## IV.   PLAINTIFFS' REQUEST TO OBTAIN JURISDICTIONAL DISCOVERY SHOULD BE DENIED

The Court has broad discretion to permit or deny discovery pending a motion

to dismiss for lack of personal jurisdiction.  *See Pebble Beach Co. v. Caddy*, 453

F.3d 1151, 1160 (9th Cir. 2006).  Discovery is not permitted in all circumstances

and "where, [as here], a plaintiff's claim of personal jurisdiction appears to be both

attenuated and based on bare allegations in the face of specific denials made by the

9

defendants, *the Court need not permit even limited discovery . . . .*" *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted) (emphasis added).  Leave for discovery should not be granted if a plaintiff fails to demonstrate how anticipated discovery would contradict a defendant's affidavits.  *See id.* "Where a plaintiff wants to subject a distant defendant to discovery in order to determine whether sufficient contacts support jurisdiction, it is reasonable for a court . . . to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the [foreign] defendant to intrusive and burdensome discovery . . . ." *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997); *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007).[10]  A "request [that] amounts merely to a 'fishing expedition'" need not be granted.  *Barantsevich v. VTB Bank,* No. CV 12-08993, 2013 WL 3188178, at *14 (C.D. Cal. May 29, 2013) (citations omitted).

### A.    Plaintiffs Have Failed to Show That Jurisdictional Discovery from Maran, Kannan, and Ramesh Is Warranted

Plaintiffs seek the following discovery from Maran, Kannan, and Ramesh: (i) videotaped depositions; (ii) interrogatories; and (iii) documents regarding contacts with absent co-defendants.[11]  As a threshold matter, Plaintiffs have not articulated any basis for seeking such discovery, including what doubt Plaintiffs have regarding the lack of jurisdiction over these Indian nationals.  In that same vein, Plaintiffs have not demonstrated a colorable basis for jurisdiction over Maran, Kannan, or Ramesh.  That Plaintiffs have not done so is not surprising.  As demonstrated in their individual motions to dismiss, there is no basis whatsoever

---

[10] *See also Martinez v. Manheim Cent. California*, No. 1:10-cv-01511-SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (denying discovery "where no theory has been posited about what facts would be discovered and what they would show if Plaintiffs were permitted to fish on a hunch that something might be caught in a widely-cast net"); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denial of discovery request not an abuse of discretion where request "was based on little more than a hunch that it might yield jurisdictionally relevant facts").

[11] To the extent Plaintiffs seek discovery regarding *Dinakaran* and Kal Publications from Ramesh, that discovery is discussed in Section IV.B.3.

1    for this Court to exercise personal jurisdiction over them.  (ECF Nos. 24, 26, 28.)

2          In support of their motions to dismiss, Maran, Kannan, and Ramesh declared,

3    among other things, that they: (i) are citizens of India; (ii) live and work in India;

4    (iii) have never lived or worked in the United States; (iv) never owned property,

5    maintained a bank account, conducted business, or entered into contracts in the

6    United States; (v) never agreed to submit to the jurisdiction of any court in the

7    United States; (vi) never traveled to California in connection with the Swami Sex

8    Scandal; and (vii) never had any contact with Swami or Menon or anyone

9    associated or affiliated with Swami or Menon.  (Maran Dec. ¶¶ 4-18; Kannan Dec.

10   ¶¶ 31-45; Ramesh Dec. ¶¶ 5-19.)  Plaintiffs offer no argument or evidence calling

11   these assertions into question.

12              **1.     Open-Ended Videotaped Depositions and Unspecified
                          Interrogatories Are Not Called For on the Present Record**

13

14         Plaintiffs generically demand "videotaped depositions" and responses to

15   "interrogatories relating to questions regarding jurisdiction."  (Pl. Mot. at 2-3.)

16   Plaintiffs, however, provide no details regarding either the issues they intend to

     probe in deposition or the specific interrogatories they intend to propound.[12]  As
17
     such, Plaintiffs have not demonstrated how the sought-after discovery would
18
     contradict Maran's, Kannan's, or Ramesh's declarations and reveal contacts with
19
     California or the United States that would permit the Court to exercise jurisdiction
20
     over them.  These requests are nothing but a fishing expedition and should be
21
     categorically denied.
22

23   _____

24         [12] Any attempt by Plaintiffs to remedy this defect in their reply brief would
     be untimely and would improperly introduce new material on reply.  *U.S. ex rel.*
25   *Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a
     moving party to introduce new facts or different legal arguments in the reply brief
26   than those presented in the moving papers.").  Plaintiffs have had ample
     opportunity to develop their position, particularly given that Defendants filed their
27   motions approximately six weeks before Plaintiffs filed their Motion to Compel
     Jurisdictional Discovery.  (ECF Nos. 23, 24, 26, 28, 49.)  Plaintiffs also had
28   knowledge of and access to a similar motion filed by Sun TV in the First Case over
     two years ago.  (First Case ECF No. 9.)

## 2.    Documents Regarding Contacts with Co-Defendants Are Irrelevant

Plaintiffs seek "production of all documents regarding [the Defendants] having contacts or associations with any co-defendant other than each other."  (Pl. Mot. at 3.)[13]  Other than the inadmissible hearsay statements of absent defendants, Plaintiffs have made no factual showing to justify this request.  (*See* Objections to Declarations.)[14]  If any responsive documents even exist, they will not yield any facts relevant to personal jurisdiction over Defendants.  As such, the request is futile and should be denied.  *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (denying discovery that "would be futile and will not yield any facts relevant to jurisdictional issues").

The request is plainly one for merits, not jurisdictional discovery.  Discovery regarding Defendants' purported interactions with the other 12 defendants Plaintiffs have sued would not unearth evidence that Defendants are subject to personal jurisdiction in the United States.  More importantly, such discovery is unlikely to reveal any information that is different from or inconsistent with what Defendants have already declared under oath:

•    Defendants did not demand any money (personally or through an agent) from Plaintiffs or anyone associated with Plaintiffs in exchange for not broadcasting or publishing information about the Swami Sex Scandal;

_____

[13] Plaintiffs also seek "co-defendant contact" discovery from Sun TV.  To avoid duplication, Defendants have not included a discussion of the propriety of this discovery as to Sun TV in this section.  The request should be denied for the same reasons.  The request is also overbroad and not narrowly tailored to the issue of personal jurisdiction.  For example, as drafted, the request would encompass documents regarding defendant Saxena's previous employment with Sun TV.  (Kannan Dec. ¶ 29.)  Such documents are plainly outside any permissible scope.

[14] Plaintiffs have not shown by a preponderance of the evidence that a conspiracy exists, and thus cannot rely on inadmissible hearsay statements to controvert Defendants' express sworn denials.  *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778 (1987) (before admitting coconspirator's statement over a hearsay objection, the record must support the existence of a conspiracy by a preponderance of the evidence).

12

la-1229476

1    •      Defendants had no prior knowledge of Plaintiffs, had no relationship

2    or affiliation with anyone associated with Plaintiffs, and did not threaten to injure

3    Swami's reputation.

4    (Maran Dec. ¶¶ 17-18; Kannan Dec. ¶¶ 26-30, 44-45; Ramesh Dec. ¶ 18-19.)

5           Even if there was evidentiary support (there is none) for Plaintiffs' claim that

6    Defendants "encouraged other individuals to extort money, knowing the victims

7    likely included Americans" (Pl. MPA 14:7), specific jurisdiction still would not lie.

8    Plaintiffs' own allegations show that the "'express aim' was local" to India. *Love v.*

9    *Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010). The video and

10   images of the Swami Sex Scandal (the purported leverage behind the alleged

11   extortion scheme) were aired to Indian viewers on Indian channels in two Indian

12   languages. (Kannan Dec. ¶¶ 3, 6.) The news stories did not involve or concern the

13   United States, California, or Plaintiffs, but reported exclusively on an Indian

14   religious leader and his indiscretions with an Indian actress in India. (*Id.* ¶¶ 7-8,

15   27.) Plaintiffs' assertion that Defendants knew "the victims *likely* included

16   Americans" cannot satisfy the test for specific jurisdiction where, as here, the

17   alleged extortion took place in India and involved information regarding Indian

18   nationals. *See Copperfield v. Cogedipresse*, 26 Media L. Rep. (BNA) 1185, 1188-

19   89 (C.D. Cal. Nov. 3, 1997) (denying jurisdiction over French magazine for

20   defamatory article published in France, written in French, circulated mainly to

21   French readers, and concerning relationship between non-residents).

22          Finally, to the extent Plaintiffs propose a "conspiracy theory doctrine" to

23   establish personal jurisdiction over Defendants, discovery of documents or

24   information regarding Defendants' contacts with another defendant would be

25   unavailing. Plaintiffs have yet to allege any factual basis on which to exercise

26   personal jurisdiction over a single defendant, nearly all of whom reside in India. As

27   such, there are no nationwide or California contacts to impute to Defendants. More

28   importantly, the Ninth Circuit has not accepted this theory and district courts in the

Ninth Circuit have repeatedly rejected it.  *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995) (acknowledging theory, but not reaching it on the merits); *see also*, *e.g.*, *In re Dynamic Random Access Memory Antitrust Litig.*, Nos. C 02-1486 PJH, (C 05-475 PJH), (C 05-1227 PJH), (C 05-2013 PJH), (C 05-1883 PJH), (C 05-1884 PJH), (C 05-2903 PJH), (C 05-2907 PJH), 2005 WL 2988715, at *8-9 (N.D. Cal. Nov. 7, 2005) (declining to adopt the conspiracy theory of personal jurisdiction); *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976) ("[P]ersonal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual.  Imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction.").

**B.    Plaintiffs Have Failed to Show That Jurisdictional Discovery from Sun TV Is Warranted**

The vast majority of the jurisdictional discovery Plaintiffs seek is directed to Sun TV and can be divided into two categories: (1) discovery regarding broadcasting of Sun TV channels into the United States, Sun TV's YouTube channels, and Sun TV's business contacts with California or the United States; and (2) discovery regarding the ownership of *Dinakaran* or Kal Publications, including documents showing overlap in managers or board members of Sun TV and Kal Publications.  (*See* Pl. Mot. at 2-3.)  None of this discovery is necessary.

**1.    Discovery regarding broadcasting of Sun TV channels into the United States is unlikely to reveal contacts sufficient to establish jurisdiction**

Relevant information regarding Sun TV's broadcasting has already been provided to Plaintiffs or, as seen in Plaintiffs' motion, is otherwise publicly available or accessible to Plaintiffs.  Plaintiffs already have more than enough information to oppose Sun TV's personal jurisdiction motion.  More importantly, the requested discovery would not uncover any new facts to support the exercise of personal jurisdiction.

1

      **a.**    **Plaintiffs' suspicions that Sun TV controls the re-transmission of broadcasts into the United States are insufficient to justify the discovery they seek**

2

3      Plaintiffs appear to seek deposition and document discovery regarding the re-

4    transmission of Sun TV programming in the United States (Pl. Mot. 2-3), in the

5    hope of unearthing evidence to contradict the sworn assertions in the Kannan

6    Declaration (*see* Pl. MPA 6, 10).  Plaintiffs justify these requests by criticizing the

7    Kannan Declaration for: (1) not containing specific-enough information about Sun

8    TV's broadcasting agreements with U.S. companies; and (2) mischaracterizing the

9    extent of Sun TV's broadcasting activity in the United States.  (Pl. MPA 6, 10.)

10   Plaintiffs purport to find support for their suspicions in Sun TV's annual reports.

11   (*Id.* at 6.)  Plaintiffs are wrong.

12      With regard to how Sun TV operates its channels, Plaintiffs claim there is a

13   discrepancy between what Kannan states and what Sun TV's annual reports state.

14   Specifically, Plaintiffs submit that Sun TV admits in the annual reports that it and

15   its subsidiaries "operate[] television channels . . . to viewers in . . . [the] United

16   States."  (*Id.*)  Sun TV does not dispute, however, that there are viewers in the

17   United States who have access to some Sun TV channels.  Kannan confirms that

18   Sun TV "operates" channels by broadcasting them from its headquarters in

19   Chennai, India.  (Kannan Dec. ¶ 15.)  To reach viewers in the United States, Sun

20   TV contracts with other companies to re-transmit channels (and programming)

21   originating in India.  (*Id.*)  The portion of the annual report Plaintiffs seize upon is

22   not to the contrary; rather, it is entirely consistent with the Kannan Declaration.

23   That the annual reports do not say Sun TV indirectly broadcasts into the United

24   States does not mean that Kannan's statement is contradictory.

25      Plaintiffs also claim that Sun TV's annual reports suggest Sun TV's

26   subsidiaries may directly broadcast to the United States.  Plaintiffs attempt to

27   support for their false assumption by comparing two sections in Sun TV's annual

28   reports — one stating that Sun TV's subsidiaries "operate[] television channels"

1   and another stating that only Sun TV "operates television channels."  (Pl. MPA 6.)

2   Based on this one purported ambiguity, Plaintiffs demand discovery on Sun TV's

3   subsidiary offices in the United States and their purported contracts with U.S.

4   companies to re-transmit Sun TV channels.  (*Id.*)  There are none.

5          Sun TV's annual reports confirm what Kannan has already declared:  Sun TV

6   has no subsidiaries located in California or the United States.  (Kannan Dec. ¶ 4.)

7   Moreover, as is evident from Sun TV's annual reports, Sun TV's two Indian

8   subsidiaries — Kal Radio Limited and South Asia FM Limited — do not engage in

9   the business of television broadcasting.  (Patel Dec. ¶ 5, Ex. B, 2012-2013 Annual

10  Report at 30 [stating subsidiaries are located in and operate out of India], 90 ["KRL

11  and SAFML are engaged in producing and broadcasting *radio software*

12  *programming* in Indian regional languages" and are "into the business of FM Radio

13  broadcasting in Chennai, Coimbatore and Tirunelveli" (emphasis added)]).)

14         Because Plaintiffs have not adduced any compelling evidence to controvert

15  Sun TV's assertions to the contrary, they are not entitled to discovery on the off

16  chance it may substantiate their speculations.  *See Videx*, *Inc. v. Micro Enhanced*

17  *Tech., Inc.,* No. 6:12-cv-0065, 2012 WL 1597380, at *2 (D. Or. May 4, 2012)

18  (denying jurisdictional discovery "[i]n light of [plaintiff's] purely speculative

19  allegations of attenuated jurisdictional contacts").

20                    **b.    Discovery of Sun TV's contractual relationships with**
                              **companies in the United States will not provide**
21                            **grounds to exercise general jurisdiction**

22         Discovery regarding Sun TV's contracts with companies that re-transmit Sun

23  TV's channels into the United States is also unnecessary.  (*See* Pl. Mot. at 2-3; Pl.

24  MPA 6.)  As set forth in Sun TV's personal jurisdiction motion, neither Sun TV's

25  broadcasting into the United States (or California) via third-party intermediaries nor

26  its agreements with those entities constitutes sufficiently "substantial" or

27  "continuous and systematic" contacts to establish general jurisdiction.  *Rano v. Sipa*

28

la-1229476

1  *Press, Inc.*, 987 F.2d 580, 587-88 (9th Cir. 1993).[15]

2          The Ninth Circuit has refused to exercise general jurisdiction over a

3  defendant if the defendant's commercial contacts, taken together, do not indicate an

4  "approximate physical presence" in the forum.  *Bancroft & Masters, Inc. v. Augusta*

5  *Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  In *Bancroft*, the Ninth Circuit

6  concluded that Augusta National, Inc.'s license agreements with several television

7  networks and vendors in California to broadcast and promote the PGA Masters

8  Tournament were insufficient to confer general jurisdiction.  *Id.*  In relevant part,

9  the *Bancroft* court held that the "agreements constitute doing business **with**

10  California, but do not constitute doing business **in** California."  *Id.* (emphasis

11  added).

12          Like the defendant in *Bancroft*, while Sun TV may be doing business **with**

13  the United States by contracting with companies to re-transmit its Indian

14  programming, it is not doing business **in** the United States.  Sending a television

15  signal via DISH Network L.L.C., or another carrier, does not establish general

16  jurisdiction over Sun TV.[16]  *See Cal. Software, Inc. v. Reliability Research, Inc.*,

17  _____

18  [15] Rule 4(k)(2) of the Federal Rules of Civil Procedure, or the federal long-
arm statute, authorizes courts to exercise jurisdiction over a foreign defendant only

19  "'in a narrow band of cases' where 'the United States serves as the relevant forum
for minimum contacts analysis.'"  *Barantsevich*, 2013 WL 3188178, at *12

20  (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d
1114, 1126 (9th Cir. 2002)).  Specifically, Rule 4(k)(2) applies where (1) plaintiff's

21  cause of action arises under federal law, (2) the defendant is not subject to personal
jurisdiction in any state court of general jurisdiction, and (3) the exercise of

22  personal jurisdiction over the defendant would comport with due process.
*Glencore*, 284 F.3d at 1126.  Thus, if the first two requirements are met, the court

23  may exercise personal jurisdiction under Rule 4(k)(2) only if the plaintiffs
demonstrate the defendants have "minimum contacts" with the United States.  *See*

24  *Holland America Line v. Wartsila North America*, 485 F.3d 450 (9th Cir. 2007).

25  [16] Plaintiffs' suggestion that they do not have access to information regarding
Sun TV's relationship with DISH ignores the declaration submitted by Sun TV in

26  the First Case.  (*See* Pl. MPA 6; First Case ECF No. 11.)  In that declaration, Sun

27  TV disclosed to Plaintiffs that it has a contract with DISH that authorizes DISH to
re-transmit Sun TV channels to DISH subscribers in the United States.  (First Case

28  ECF No. 11, Raja Dec. ¶¶ 18-19.)  The contract terms are confidential.  (*Id.*)

631 F. Supp. 1356, 1360 (C.D. Cal. 1986) (stating that "[t]he mere act of transmitting information through the use of interstate communication facilities is not . . . sufficient to establish [general] jurisdiction over the sender").  Nor is it relevant whether Sun TV receives payments from the companies that are authorized to re-transmit Sun TV content in the United States (like DISH Network) or are tasked with increasing distribution of Sun TV channels (like Global Media Management LLC); this is so even if payments are driven by subscription rates. *See Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No. SACV 07-846-MRP ANX, 2008 WL 7071464, at *7 (C.D. Cal. Jan. 17, 2008) (royalty figures accruing to defendant from California licensees did not invoke general jurisdiction where financial benefits depend in part on licensees' business practices); *Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, No. CV 01-11015MMM, 2003 WL 24242419, at *10 (C.D. Cal. Apr. 24, 2003) ("[G]enerating substantial revenue from the sale of products or services to forum state residents is [not] by itself sufficient to support the exercise of general jurisdiction.") (listing several federal cases).

Finally, Sun TV's "contacts" with the United States are nowhere near approximating the physical presence required by *Bancroft*.[17]  Sun TV is incorporated and has its principal place of business in India; it has no offices or employees in the United States, transacts no business in the United States, has no assets or property in the United States, and pays no taxes here.  (Kannan Dec. ¶¶ 4, 18, 20-24); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (to exercise general jurisdiction, a defendant must be "essentially at home in the forum State").

---

[17] There appears to be one case in which the Supreme Court has affirmed general jurisdiction.  *See Mavrix*, 647 F.3d at 1224 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447 (1952)).  In that case the corporate defendant's president worked out of an office in Ohio from which he drew and distributed payroll checks, performed the corporation's filing and correspondence, and held regular directors' meetings.  The corporation also held two Ohio bank accounts.  *Id.*  None of these facts apply here.

1

2

          **c.**    **Discovery of Sun TV's relationship with marketing and distribution companies in the United States is unnecessary**

3        Plaintiffs seek discovery regarding Sun TV's contractual relationship with

4    Global Media Management LLC and World Media Connect LLC (the "LLCs"),

5    which Sun TV appointed in late 2010 to expand distribution of Sun TV channels in

6    North America.  (Pl. MPA 11.)  Plaintiffs also seek discovery regarding where the

7    LLCs were formed and operate and whether Maran, Kannan, or Ramesh hold a

8    position with the LLCs.  If permitted, this discovery will not yield any facts to

9    support jurisdiction over Sun TV (or Maran, Kannan, or Ramesh).

10        Sun TV's agreements with the LLCs do not confer general jurisdiction over

11    Sun TV.  As with Sun TV's "re-transmission" contracts, Sun TV's "LLC" contracts

12    only show that Sun TV is "'doing business *with* [the United States],' but not

13    necessarily 'doing business *in* [the United States.]'"  *Mavrix Photo, Inc. v. Brand*

14    *Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011); *Schwarzenegger v. Fred Martin*

15    *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (rejecting nonresident defendant's

16    partnership with a forum-based advertising agency as a basis for general

17    jurisdiction); *Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*, No. SACV

18    13-320-JST ANX, 2013 WL 5420984, at *3-4 (C.D. Cal. Sept. 17, 2013) (Swedish

19    corporation's collaboration with San Francisco radio station to broadcast its Nobel

20    Media programs did not subject foreign defendant to general jurisdiction).[18]

21        Moreover, information regarding the LLCs' corporate formation and whether

22    they are subsidiaries of Sun TV is discoverable from publicly available sources.

23    Plaintiffs are in possession of Sun TV's most recent annual report (Lesowitz Dec.

24

---

25        [18] To the extent Plaintiffs contend that Sun TV's relationship with these
LLCs could somehow establish specific jurisdiction over Sun TV, this theory also

26   fails.  The press release was issued on November 29, 2010 (Lesowitz Dec. ¶ 3, Ex.
C), eight months after Sun TV first broadcast the Swami Sex Scandal in March

27   2010.  *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.
1995) (For specific jurisdiction to lie, "the claim must be one which arises out of or

28   results from the defendant's forum-related activities.").

la-1229476

¶ 2, Ex. A), which identifies Sun TV's only subsidiaries, Kal Radio Limited and South Asia FM Limited, both located in India.  (*See* Patel Dec. ¶ 5, Ex. B at 30, 90.) Similarly, the location of where these LLCs were formed and where they operate can be readily found on Secretary of State websites, to which Plaintiffs have equal access.  (*See* Patel Dec. ¶¶ 6-7, Exs. C & D.)

Finally, Plaintiffs cannot seriously question whether Maran, Kannan, or Ramesh hold positions with the LLCs.  All three have denied ever having conducted business in the United States (Kannan Dec. ¶ 38; Maran Dec. ¶ 11; Ramesh Dec. ¶ 12).  If Plaintiffs mean to advance an alter-ego or other theory that would allow the Court to impute the LLCs' contact to Defendants, they have made no such showing.  *See Martinez*, 2011 WL 1466684, at *5 (denying jurisdictional discovery where plaintiffs did not allege any facts to support claim that defendant and subsidiary were not separate entities).[19]

### 2.   Evidence That Sun TV Operates YouTube Channels Featuring Indian-Language Television Programs Provides No Colorable Basis for Personal Jurisdiction

Plaintiffs appear to seek discovery regarding Sun TV's YouTube channels to establish specific and general jurisdiction over Sun TV.  Because neither is viable, Plaintiffs' request for a Rule 30(b)(6) deposition on this topic and any related document discovery must be denied.

*First*, Plaintiffs cannot in good faith claim that Sun TV "broadcast" the Swami Sex Scandal on YouTube or that there is some open question about whether Sun TV did so.  (Pl. MPA 13:6-8.)  Plaintiffs make no allegations regarding Sun TV broadcasting the Swami Sex Scandal on YouTube in the FAC.  Nor could they.

---

[19] *See also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422-24 (9th Cir. 1977) (subsidiaries' contacts with forum may be imputed to the parent where the subsidiary is the parent's alter ego or general agent); *Cargnani v. Pewag Austria G.m.b.H*, No. CIV. S-05-0133 WBS JFM, 2007 WL 415992, at *6 (E.D. Cal. Feb. 5, 2007) (The "mere presence on the board of a subsidiary by a director of the parent is insufficient to make the subsidiary an 'alter ego.'").

1   In a declaration submitted in support of its motion to dismiss the First Case, an

2   authorized representative of Sun TV affirmatively stated that Sun TV did not place

3   material about Swami on YouTube.  (First Case ECF No. 11, Raja Dec. ¶ 20.)  As

4   such, Plaintiffs can offer no colorable theory as to how specific jurisdiction might

5   arise from Sun TV's YouTube stations.  *See Ballard v. Savage*, 65 F.3d 1495, 1500

6   (9th Cir. 1995) (under the "but for" test employed by the Ninth Circuit, claims must

7   arise from forum-related contacts); *see also Holland America*, 485 F.3d at 462

8   (denying specific jurisdiction as to foreign defendants without offices or employees

9   in the United States, and where website did not target the United States).

10      ***Second***, Plaintiffs' speculation that Sun TV's YouTube stations could

11   "warrant general jurisdiction in California" is not supported by the law.  (Pl. MPA

12   12:19-20.)  Courts in the Ninth Circuit have routinely held that a website does not

13   create contacts "continuous or substantial enough to establish general jurisdiction."

14   *Pebble Beach*, 453 F.3d at 1154 n.2, 1160 (affirming denial of jurisdictional

15   discovery after finding that foreign defendant's passive website did not support

16   general or specific jurisdiction) (citation omitted).[20]  Moreover, even if the

17   YouTube site, which is accessible worldwide, could be construed as advertising

18   Sun TV's programs, Sun TV's contract with California-based Google, Inc. still

19   would not rise to a significant commercial contact.  *See Rongxiang Xu*, 2013 WL

20   5420984, at *3-4 (partnering with various California entities on social media sites,

21   including Facebook, Twitter, Google-Google Plus, and YouTube, was not basis for

22   general jurisdiction); *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542

23   (3d Cir. 1985) (advertising in forum through newspapers of international circulation

24   _____

25   [20] *See also Mavrix Photo*, 647 F.3d at 1226 ("Brand's operation of an interactive website — even a 'highly interactive' website — does not confer general jurisdiction."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320-21 (9th Cir. 1998) (domain name in defendant's website insufficient for general jurisdiction); *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1019 (N.D. Cal. 2005) ("[T]he fact that AtomicPark maintains a highly interactive website *by itself* would not be enough to establish general jurisdiction.")

la-1229476

1   was not "continuous and substantial" contacts).

2         Plaintiffs' reliance on *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th

3   Cir. 2003), is misplaced. *Gator.com* presented a "close question," and after testing

4   the body of Ninth Circuit authority, the Ninth Circuit concluded there was general

5   jurisdiction "in light of L.L. Bean's extensive marketing and sales in California, its

6   extensive contacts with California vendors, and the fact that, as alleged by Gator, its

7   website is clearly and deliberately structured to operate as a sophisticated virtual

8   store in California." *Id.* at 1078.

9         None of the factors present in *Gator.com* are present here. Sun TV does not

10  ship a large volume of "products" like L.L. Bean or maintain "ongoing contacts

11  with numerous California vendors." *Id.* Sun TV's YouTube channels are neither a

12  form of electronic advertising that Sun TV "targets" at California nor anything

13  close to a "virtual retail store." *Gator.com*, 341 F.3d at 1078.[21] The channels are

14  available worldwide, and Plaintiffs have no basis to infer that visitors to the

15  channels are predominately located in California or the United States. A contrary

16  inference is equally as plausible — the television programs available on the site are

17  only in Indian dialects, suggesting that the channels are directed to non-English

18  speaking viewers who are more likely to reside in India. (*See* Kannan Dec. ¶ 6.)

19              **3.    Discovery Regarding Ownership of *Dinakaran* or Kal
                         Publications Is Irrelevant to the Jurisdictional Inquiry**

20

21         To contest statements made under oath by Kannan and Ramesh that Sun TV

      does not own or control *Dinakaran* or Kal Publications (Kannan Dec. ¶ 5; Ramesh
22
      Dec. ¶ 2), Plaintiffs offer four online media "reports" stating that Sun TV purchased
23
      *Dinakaran* in 2005 (Lesowitz Dec. ¶ 8, Ex. G). Plaintiffs do not explain how
24
      articles announcing Sun TV's purchase of *Dinakaran* eight years ago somehow
25
      shows that Sun TV continues to own (or did own) *Dinakaran* at the time *Dinakaran*
26

27  _____

28        [21] Indeed, there are no commercial transactions between Sun TV and visitors
      of the YouTube site.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' JURISDICTIONAL DISCOVERY MOTION**
la-1229476

1    published images of the Swami Sex Scandal.  Nor do Plaintiffs explain how

2    Kannan — a corporate officer of Sun TV — and Ramesh — the Managing Director

3    of Kal Publications and the Editor, Printer, and Publisher of one of *Dinakaran*'s

4    editions — can be contradicted by unverified and unauthenticated media reports.

5         Moreover, for Plaintiffs to meet their burden of proof to establish personal

6    jurisdiction (presumably over Sun TV or Ramesh) does not necessitate discovery,

7    by deposition or through documents, to "clarify the relationship between *Dinakaran*

8    and [Sun TV]."  (Pl. MPA 13.)  That is because, absent an evidentiary hearing, a

9    court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a

10   prima facie showing of personal jurisdiction."  *Boschetto*, 539 F.3d at 1015.  Any

11   "[c]onflicts between the parties over statements contained in affidavits must be

12   resolved in the plaintiff's favor."  *Id.*  Thus, to the extent Plaintiffs believe a

13   conflict exists between Kannan's and Ramesh's declarations on the one hand and

14   the online media reports, Plaintiffs need only properly introduce them to the Court.

15        Even if the media reports somehow created a disputed question regarding the

16   ownership of *Dinakaran*, the question of whether *Dinakaran* is a subsidiary of Sun

17   TV or whether Kal Publications shares common management with Sun TV is

18   irrelevant to determining personal jurisdiction over Sun TV or Ramesh.  Plaintiffs

19   do not allege that the images of the Swami Sex Scandal were ever accessed by

20   *Dinakaran* readers or web users anywhere in the United States.  These types of

21   forum contacts — not Sun TV's connection to *Dinakaran* — are relevant to the

22   question of whether the Court has specific jurisdiction over Sun TV or Ramesh.

23   *See, e.g.*, *Schwarzenegger*, 374 F.3d at 807 (holding that infringing advertisement

24   was expressly aimed at Ohio, not California, where the ad was never circulated in

25   California and there was no reason to believe Californians would see it).

26        Because Plaintiffs have not shown how media reports of Sun TV's purported

27   purchase of *Dinakaran* in 2005 have "controverted" "pertinent facts bearing on the

28   question of jurisdiction," discovery regarding ownership of *Dinakaran* must be

1   denied.  *Butcher's Union Local No. 498, United Food & Commercial Workers v.*

2   *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

3   **V.    PLAINTIFFS DO NOT REQUIRE ADDITIONAL TIME TO**
    **RESPOND TO DEFENDANTS' MOTIONS TO DISMISS**

4
              Because Plaintiffs are not entitled to discovery regarding *forum non*

5   *conveniens* or jurisdiction, Plaintiffs' request to continue the February 10, 2014

6
    hearing on the Motions to Dismiss (ECF No. 50) for six months is unnecessary and

7   should be denied (Pl. Mot. 2).  Under the current schedule, Plaintiffs' oppositions

8
    are due on January 6, 2014 — 14 weeks after Defendants filed their Motions.  (ECF

9
    Nos. 23, 24, 26, 28, 30, 31, 50.)  As set forth above, Plaintiffs have all of the

10  information they need to oppose the Motions.  Likewise, briefing on the Motions

11
    should not be interrupted for Plaintiffs to seek leave to file an amended pleading,

12
    particularly one that will contain factual allegations based on hearsay.  (*See*

13
    footnote 6.)  Consideration of whether Plaintiffs should be granted leave to amend

14
    should be deferred until after the Court considers the pending Motions to Dismiss.[22]

15

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26

27        [22] In the event Plaintiffs file a motion for leave to file an amended complaint
    or the Court entertains Plaintiffs' request for leave to amend, Defendants reserve
28  the right to respond more fully to such a request.

**VI.   CONCLUSION**

The issues that have been presented to the Court by Defendants' pending Motions to Dismiss can be resolved without resort to expensive and burdensome discovery.  Accordingly, Defendants Sun TV, Maran, Kannan, and Ramesh respectfully request that this Court deny Plaintiffs' request for jurisdictional discovery.

Dated:  November 18, 2013          Respectfully submitted,

MORRISON & FOERSTER LLP

By:  /s/ Purvi G. Patel
       Purvi G. Patel
*Attorneys for Defendants*
*Sun TV Network Limited,*
*Kalanithi Maran, S. Kannan,*
*and R.M.R. Ramesh*

la-1229476

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 18th day of November, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

/s/ Purvi G. Patel
Purvi G. Patel

*Attorney for Defendants*
*Sun TV Network Limited,*
*Kalanithi Maran, S. Kannan,*
*and R.M.R. Ramesh*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' JURISDICTIONAL DISCOVERY MOTION
la-1229476