ERIK S. SYVERSON (State Bar No. 221933)
esyverson@millerbarondess.com
SCOTT M. LESOWITZ (State Bar No. 261759)
slesowitz@millerbarondess.com
STEVEN T. GEBELIN (State Bar No. 261507)
sgebelin@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE BLISS FOUNDATION, a California Non-Profit Corporation; and NITHYANANDA DHYANAPEETAM TEMPLE & CULTURAL CENTER, a California Non-Profit Corporation,<br><br>                    Plaintiffs,<br>v.<br><br>SUN TV NETWORK LIMITED, an Indian company; NAKKHEERAN PUBLICATIONS, an Indian company; KALANITHI MARAN, an individual; DHARMARAJA HANSRAJ SAXENA, an individual; RAMADOS AYYAPPAN, an individual; V. RAJA, an individual; S. KANNAN, an individual; R. M. R. RAMESH, an individual; RAMANATHAN GOPAL, an individual; ANNAMALAI KAMARAJ, an individual; NITHYA DHARMANANDA, a.k.a. LENIN KARUPPANNAN, an individual; MOORTHI SHREEDHAR, an individual; KARUPPANNAN KUMAR, an individual; GIRIDHAR LAL PRASAN KUMAR, an individual; AARTHI RAO, an individual; MANICKAM NARAYANAN, an individual; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | **CASE NO. 5:13-cv-00393-VAP (SPx)**<br><br>[Assigned to the Honorable Virginia A. Phillips, District Judge, and the Honorable Sheri Pym, Magistrate Judge]<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR JURISDICTIONAL DISCOVERY**<br><br>Date:         December 9, 2013<br>Time:        2:00 p.m.<br>Courtroom: 2 |

# TABLE OF CONTENTS

I. INTRODUCTORY STATEMENT .......................................................................... 1

II. THE NEW FACTS CONTAINED IN PLAINTIFFS' DECLARATIONS ARE CONSISTENT WITH EACH OTHER AND WITH THE FIRST AMENDED COMPLAINT ............................................................................................................. 1

III. PLAINTIFFS ARE ENTITLED TO DISCOVERY REGARDING FORUM NON-CONVENIENS ............................................................................................ 4
    A.    THE BAR FOR OBTAINING FORUM NON-CONVENIENS DISCOVERY IS LOW ........ 4
    B.    PLAINTIFFS' HAVE A REALISTIC CHANCE TO PREVAIL ON FORUM NON-CONVENIENS ............................................................................................ 4
    C.    DISCOVERY IS LIKELY TO AID IN FINDING THAT CALIFORNIA IS A PROPER FORUM ............................................................................................ 5

D. FORUM NON-CONVENIENS IS NOT BEING DECIDED BEFORE JURISDICTION ............................................................................................ 6

E. PLAINTIFFS NEED NOT PROVIDE EVERY QUESTION THEY WILL ASK IN DISCOVERY ............................................................................................ 7

IV. PLAINTIFFS ARE ENTITLED TO DISCOVERY REGARDING SPECIFIC JURISDICTION ............................................................................................ 7

V. PLAINTIFFS ARE ENTITLED TO DISCOVERY REGARDING GENERAL JURISDICTION ............................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Bauman v. DaimlerChrysler Corp.*,
  644 F.3d 909 (9th Cir. 2011) ................................................................................ 7

*Boston Telecommunications Group, Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) .............................................................................. 5

*Bourjaily v. United States*,
  483 U.S. 171, 183 (1987) ..................................................................................... 3

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) .............................................................................. 4

*Gator.Com Corp. v. L.L. Bean, Inc.*,
  341 F.3d 1072 *(9th Cir. 2003)* ........................................................................... 12

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .......................................................................... 4, 9

In re *Theo. H. Davies & Co., Ltd. v. Republic of Marshall Islands*,
  174 F.3d 969, 974-75 (1998) .............................................................................. 12

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
  715 F.3d 716 (9th Cir. 2013) ................................................................................ 2

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
  84 F.3d 560 (2d. Cir.1996) ................................................................................. 12

*Mich. Nat'l Bank v. Quality Dinette, Inc.*,
  888 F.2d 462 (6th Cir.1989) ............................................................................... 12

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .............................................................................................. 4

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .......................................................................................... 4, 5

*Texas Dept. of Community Affairs v. Burdine*,
  450 U.S. 248 (1981) .............................................................................................. 4

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ................................................................................ 8

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
  556 F.2d 406 (9th Cir. 1977) ................................................................................ 6

**Statutes**

Fed. Rules of Evid.  Rule 801(d)(2)(E) .................................................................... 3

## I. Introductory Statement

Plaintiffs hereby file this reply to Defendants Sun TV Network Limited ("Sun TV"), Kalanithi Maran, S. Kannan, and R.M.R. Ramesh's (collectively, "Defendants") Opposition, filed on November 18, 2013 (the "Opposition"), to Plaintiffs' Motion for Jurisdictional Discovery (the "Motion").

The Opposition attempts to fight future battles: whether Plaintiffs may amend their complaint following the ruling on the Motion and whether Plaintiffs could defeat Defendants' motions to dismiss at this very moment. The simple question before the Court is whether or not discovery realistically could be helpful in determining that California is a convenient venue and whether there is personal jurisdiction.

The Opposition also attempts to distort Plaintiffs' evidence. That evidence is that Defendants conspired with other individuals to extort money from the Plaintiffs and others, and that Defendants knew that Californians and Americans were being targeted.[1] This is far from a case where the actions were only directed to India and where the injuries were meant only to occur in India. Further, Defendants caused the inappropriate video (the "Video") of Sri Nithyananda Swami ("Swami") to be aired in order to further this extortion plot.

Additionally, Plaintiffs' new declarations are not inconsistent with each other or with the allegations in the First Amended Complaint. And these new declarations properly rely on co-conspirator statements, which are not hearsay.

## II. The New Facts Contained In Plaintiffs' Declarations Are Consistent With Each Other And With The First Amended Complaint

Attempting to litigate a yet-to-be-heard motion to amend the complaint, Defendants preemptively attack the new evidence presented in the Motion. Defendants even include a footnote arguing that Plaintiffs' future motion to amend

---

[1] This evidence is derived from the Declarations in support of the Motion from Sri Nithya Pranananda ["Pranananda Declaration"], Sri Nithya Sadhananda ["Sadhananda Declaration"], Gopal Reddy Sheelum, ["Sheelum Declaration"], and Sri Nithya Hamsananda ["Hamsananda Declaration"]).

1

should be denied. (Opposition, pg. 4, footnote 6.) Defendants argue that the facts contained in the four declarations entered in support of the Motion ("Plaintiffs' Declarations") "cannot be given credence because they are internally inconsistent, irreconcilable with the [First Amended Complaint], and contradicted by Defendants' sworn declarations..." (Opposition, 4:12-14.)

This assertion is incorrect. Starting with the last contention, it does not matter that there are contradictions between Plaintiffs' Declarations and Defendants' declarations. Defendants' declarations are not the unquestionable truth. It goes without saying that a party may introduce evidence that his or her adversary disputes. Furthermore, when determining if exercising jurisdiction against a defendant is proper, all factual disputes must be decided in favor of the plaintiff. *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 741 (9th Cir. 2013).

Defendants' claims that the Plaintiffs' Declarations are internally inconsistent and irreconcilable with the First Amended Complaint are unpersuasive. Defendants provide three alleged internal inconsistencies and contradictions with the First Amended Complaint. The three factual assertions that Defendants flag as inconsistent or contradictory are: (1) "Sadhananda and Bhaktananda traveled *to India* to discuss the video footage of Swami's sexual indiscretions[2] because members of the purported enterprise demanded as much;" (2) "Not a single alleged extortion demand or payment was made in U.S. dollars; all demands and payments were made in Indian rupees;" and (3) "A wire transfer from the United States to India is more likely to leave a trail than cash payments in Indian rupees." (Opposition, 4:15- 5:6.)

---

[2] Plaintiffs object to the use of terms such as the "Swami Sex Scandal," "video footage of Swami's sexual indiscretions," etc., under FRE 403. (1) The so-called scandal as purported by the media was not a result of actions performed by Swami. The scandal was a result of Sun TV airing the Video as part of an extortion plot against the Plaintiffs. The Court should not allow Defendants to blame the victim(s) for Defendants' actions. And separately, (2) Plaintiffs dispute that the Video depicts real events; one of Defendants' co-conspirators even admitted that the Video was fake. (Sheelum Declaration, ¶ 6.) Defendants contend in their evidentiary objections that it is irrelevant whether or not the Video was fake; yet they then use highly prejudicial language indicating that the Video is real.

2

1  It is unclear why Defendants flagged assertion (1) as problematic. As for factual assertion (2), currencies can be exchanged; money from an account in one currency can be transferred to another account in a different currency. It is also quite possible that people in India would talk in terms of rupees, even if the final exchange would be in dollars (like when an American traveler buying items overseas thinks in dollars even when dealing in the local currency). As for factual assertion number (3), Defendants and their counsel have provided no credentials that would demonstrate that they are experts in what types of monetary transfers are most likely to be detected by Indian authorities. Furthermore, Defendants misread the Plaintiffs' Declarations. The Plaintiffs' Declarations do not state that Defendants demanded payment from outside of India to inside of India. For example, Sadhananda declared: "they wanted American funds to be wired from America, in order for the funds not to be traced to India and to Sun TV/the Sun Group." Defendants wanted the exchange of money to take place completely outside of India: from foreign account to foreign account. And as for the cash argument, it would be quite difficult to obtain the nearly US$10 million worth of money in cash discussed in the complaint (the rough value of 600 million rupees). While we are not an expert in this area, any means of obtaining US$10 million in cash would raise far more suspicion than any type of wire transfer. (Plus there are logistical and safety issues of how to transport a massive quantity of cash).

Finally, Defendants claim that Plaintiffs' Declarations are based on inherently unreliable and inadmissible hearsay. (Opposition, pg. 12 and footnote 13.) This is not so. The declarations detail statements made by Defendants' co-conspirators in furtherance of their conspiracy to extort money from Plaintiffs and others. The co-conspirator hearsay exception is an established exception to the hearsay rule. *Bourjaily v. United States*, 483 U.S. 171, 183 (1987) ("We think that these cases demonstrate that co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion.") Co-conspirator statements are classified as not

1  hearsay under the Federal Rules of Evidence. Rule 801(d)(2)(E). And in the case of
2  Defendant Saxena's statements, Saxena was a high-level executive for Sun TV. Thus
3  his statements are the statements of Sun TV. Rule 801(d)(2)(D).

### III. Plaintiffs Are Entitled To Discovery Regarding Forum Non-Conveniens

####   A.   The Bar for Obtaining Forum Non-Conveniens Discovery is Low

Before Plaintiffs have filed an opposition to their motion to dismiss due to forum non-conveniens, and before Plaintiffs have had an opportunity to present their affidavits and other evidence, Defendants argue that Plaintiffs are so clearly going to lose, that discovery regarding forum non-conveniens is foreclosed. (Opposition, 8:12-20.) However, the only question before the Court now is whether or not there is a reasonable probability that discovery will affect the outcome. *See, e.g., Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("liberal discovery rules [are] applicable to any civil suit in federal court"); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (Jurisdictional discovery is required if such discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction."). Defendants attempt to use *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) to establish a higher bar for discovery. However, *Piper Aircraft* does not discuss discovery. The portion that Defendants highlight discusses what the moving party's evidentiary obligations are, not the discovery or investigative rights of the responding party. *Id.*

####   B.   Plaintiffs' Have a Realistic Chance to Prevail on Forum Non-Conveniens

Defendants underestimate the probability of Plaintiffs' chances of success. Defendants ignore that Plaintiffs' are both California corporations headquartered in California. Thus, there is a presumption that Plaintiffs' choice of forum is convenient. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011). In contrast, in *Piper Aircraft*, the plaintiffs were Scottish nationals. 454 U.S. at 238.

4

Further, Defendants have provided evidence that Sun TV was intimidating individuals at Plaintiffs' temples in California as part of their extortion plot. (Sheelum Declaration, ¶ 12.) Witnesses in California will be needed to elaborate on these actions. Additionally, the injuries that Plaintiffs suffered due to Defendants' actions, including loss of membership fees, donations, and closure of the Plaintiffs' main temple, occurred in California. The witnesses to these damages will be residents of California. And these California-based-damages were all intended consequences of Defendants' conspiracy. (Sadhananda Declaration, ¶ 12.)

Further, even if India is the "principal locus" of this lawsuit, that does not mean that California is an unacceptable venue. *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) ("We need not hold, as [appellee] urges, that 'California is the principal locus' of the case or that California 'has more of an interest than any other jurisdiction' in order to conclude that California has a meaningful interest in this litigation. With this [forum non-conveniens] public interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest.") (certain internal quotations omitted).

C.  <u>Discovery is Likely to Aid in Finding that California is a Proper Forum</u>

Defendants' main argument is that forum non-conveniens is inappropriate because the witnesses and evidence[3] are located in India. One of the important, unanswered questions for forum non-conveniens is whether Defendants caused the Video, and photographs derived from the Video, to be aired/published in the United States in furtherance of the extortion plot. Plaintiffs need additional discovery to answer this question. If the Video was aired in the United States, and caused damage to the Plaintiffs in the United States, then this will (1) be further evidence tying this case to California/the United States, and (2) necessitate American witnesses to testify

---

[3] This is not a case like *Piper Aircraft* that involved an airplane crash. Here, any physical evidence will consist of copies of videos and articles. Such evidence may be easily transmitted from India to the United States. It is not the type of evidence that requires investigation, analysis, or viewing by a jury, in the place of its creation.

5

REPLY IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY

168409.1

regarding the airing of the Video in the United States, both in terms of its broadcasting, and the negative reactions and damages caused by people viewing it.

It is not mere speculation that the Video was aired in the United States. According to Sun TV's 2009-2010 Annual Report, Sun TV was broadcasting content in the United States at that time. (Lesowitz Declaration to the Motion, ¶ 2 & Exhibit B [2009-2010 Annual Report excerpts].) And Sun TV admits in its declaration that their stations are broadcast in the United States. (Docket Entry 25, Declaration of S. Kannan ["Kannan Declaration"], ¶ 15.)

After the initial airing of the Video, in further efforts to extort money from the Plaintiffs and others, Sun TV continued airing the Video and other negative coverage of Swami and demanded payment for the coverage to stop. (Sheelum Declaration, ¶ 12; Hamsananda Declaration, ¶¶ 3-4.) If Sun TV caused this coverage to air in the United States, this would further support that California is an appropriate forum.

D. Forum Non-Conveniens is not Being Decided Before Jurisdiction

Defendants argue that all of Plaintiffs' discovery requests, including their discovery requests regarding jurisdiction, should be denied, because the Court may dispose of forum non-conveniens before Defendants' two other motions to dismiss. (Opposition, 1:11-14.) This argument is flawed for multiple reasons. First, Defendants have agreed on a briefing and hearing schedule whereby the questions of jurisdiction, forum non-conveniens, and failure to state a claim, will be decided on the same date. (Docket Entry 50.) This briefing and hearing schedule contemplated and accommodated Plaintiffs' motion for jurisdictional discovery. Second, if Defendants' forum non-conveniens motion is heard separately and is denied, and only thereafter, Plaintiffs engage in jurisdictional discovery, this will cause an unnecessary, lengthy delay in the proceedings. Third, the issues involved in determining jurisdiction and forum non-conveniens are similar and overlap to a degree, making it more efficient to decide both matters simultaneously. *See e.g., Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 431 (9th Cir. 1977) ("both the due process test for *in personam*

jurisdiction and our own *Timberlane* 'jurisdictional rule of reason' are also relevant to a ruling on the forum non conveniens issue"); *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 (9th Cir. 2011) (while forum-non conveniens and jurisdiction are different, "forum non conveniens and personal jurisdiction analyses overlap").

E. <u>Plaintiffs Need not Provide Every Question They Will Ask in Discovery</u>

Defendants complain that Plaintiffs have not provided the questions that they will ask in interrogatories and at the depositions. (Opposition 7: 14-15; 11:13-16.) Plaintiffs need not provide the exact contents of every single interrogatory and every single deposition question that they plan to ask in a motion for leave to take discovery. If Defendants feel that a question or interrogatory does not relate to the issues discussed in the Motion, or that they are not directed to the merits of the case, Defendants may object at the appropriate time.

The actual Motion itself provides over one-and-a-half pages of detail in what discovery is being sought. The Memorandum of Points and Authorities then provides approximately five more pages discussing what discovery is being requested and why. (pgs. 10-15.) This is more than adequate notice. The Motion is for leave to take discovery, not a debate about what individual questions are appropriate. Such issues would be directed to the Magistrate Judge.

**IV.** **<u>Plaintiffs Are Entitled To Discovery Regarding Specific Jurisdiction</u>**

Defendants claim that "there is no basis whatsoever for this Court to exercise personal jurisdiction over [Maran, Kannan, and Ramesh]," and that Plaintiffs will inevitably not be able to demonstrate personal jurisdiction over Sun TV either. (Opposition, 10:20-11:1; 13:5-21.) This is incorrect. Plaintiffs have already provided declarations establishing a strong showing regarding personal jurisdiction.

Plaintiffs' declarations lay out cogent facts that Defendants engaged in a conspiracy with other individuals to extort money from the Plaintiffs and others, in exchange for not airing the Video, stopping negative coverage of Swami, and not harming the Plaintiffs. Defendants were aware that Plaintiffs and other Americans

7

were being targeted. Defendants encouraged their co-conspirators to target Americans. This is sufficient for specific jurisdiction, and it certainly is a close enough call to allow for discovery.

For example, on February 17, 2010, co-conspirator Shreedhar told Swami's assistant that he represented a group that was aware that Swami had organizations in America, that they wanted these organizations to provide a large payment in exchange for not releasing the Video/photos from the Video, and that he wanted Plaintiffs to send representatives to India to negotiate. (Pranananda Declaration, ¶ 4.) Shreedhar stated that this group included Defendants Sun TV, Maran, Kannan, and Ramesh (all of the Defendants who are the subject of this motion). (*Id.*) On February 23, 2010, co-conspirator Saxena told Sadhananda (a director and officer of the Temple) that he was an executive of Sun TV, that he was aware that Plaintiffs were based in California, and that Plaintiffs and other Swami devotees had to pay Sun TV for Sun TV not to air the video. (Sadhananda Declaration, ¶ 9.) Saxena said that Maran, the head of Sun TV, knew of and had approved of the extortion plot. (*Id.*) Saxena stated that they wanted the transfer of funds to be conducted outside of India to avoid detection by authorities. (*Id.*) On February 24, 2010, co-conspirator Rao (a former employee of the Plaintiffs) made similar comments implicating Sun TV in the extortion against Plaintiffs. (*Id.*, ¶ 11.) Corroborating these statements, when payment was not made, Sun TV did indeed air the Video, and they were the first station to air it. (*Id.*, ¶ 13.) Sun TV continued to air the Video and negative coverage of Swami, as part of continuing efforts to extort money from Plaintiffs. (Sheelum Declaration, ¶ 12.) Sun TV agents continued to harass Plaintiffs over an extended period. (*Id.*, Hamsananda Declaration, ¶ 3-4.)

Defendants misstate the law regarding specific jurisdiction. Ninth Circuit case law is clear that performing an act from outside of the forum that the defendant knows is likely to cause harm inside of the forum is sufficient to satisfy minimum contacts. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)

1 (holding that a court may exercise jurisdiction when a defendant performs an action
2 outside of the forum that causes injury inside of the forum, when the defendant knows
3 that such injury "is likely to be suffered in the forum state").

4     Plaintiffs have not yet filed their opposition to Defendants' motion to dismiss
5 for lack of personal jurisdiction. At that time, Plaintiffs are entitled to provide
6 additional declarations and evidence. For now, the pertinent question is not if
7 Plaintiffs succeed on the merits regarding jurisdiction at this very second. The
8 question is if discovery "might well demonstrate facts" that can help lead the Court to
9 finding jurisdiction exists. *Harris Rutsky*, 328 F.3d at 1135.

10     Jurisdictional discovery will help solidify Plaintiffs' arguments regarding
11 specific jurisdiction. Fox example, if Defendants caused the Video to be played in the
12 United States as part of their extortion plot against the Plaintiffs and other Americans,
13 this would be additional evidence in favor of specific jurisdiction. Another example
14 would be if Defendants caused further negative coverage against Swami to air in the
15 United States in order to extort money from Plaintiff and other Americans.

16     The discrepancy over ownership of *Dinakaran* further justifies discovery. This
17 issue goes beyond whether Sun TV owns *Dinakaran*. The question is whether the
18 Defendants have such a relationship with *Dinakaran* (either because they are owned
19 by the same parent company, Sun Group [who does not appear to be publically
20 traded], or share management or board members, or have a contractual partnership)
21 that would support Plaintiffs' contention that Defendants, like Ramesh, caused the
22 pictures from the Video to be published in *Dinakaran* in order to further the extortion
23 plot. This claim will be strengthened by evidence that (1) Sun TV and *Dinakaran* are
24 related entities that would logically be acting as a unit in the extortion, and (2) that
25 agents and employees of Sun TV could cause *Dinakaran* to publish certain material.

26 **V.**    **Plaintiffs Are Entitled To Discovery Regarding General Jurisdiction**

27     Defendants argue that Plaintiffs' discovery requests regarding general
28 jurisdiction could not possibly lead to the Court exercising general jurisdiction over

9

them. (Opposition, 19:3-9.) Plaintiffs are in a difficult position to respond, because Plaintiffs do not know what discovery will yield.

Exacerbating this is that Defendants have been misleading in their declarations. Defendants are unpersuasive when they claim that S. Kannan's declaration regarding Sun TV's broadcasting in the United States is consistent with Sun TV's Annual Report. Kannan's Declaration states at paragraph 16: "Sun TV has no control over the companies that re-transmit the channels, or where the companies re-transmit the channels. To the extent individuals subscribe with these companies to receive certain channels, Sun TV has no control over who those subscribers are, where they are located, or what channels they select. Sun TV has never contracted with any subscriber in California or the United States." In contrast, Sun TV's 2012-2013 Annual Report states that Sun TV "currently operates television channels in four South Indian languages predominantly to viewers in India, and also to viewers in [list of countries including the United States]." These two statements speak for themselves: they are inconsistent.[4] Further undermining Kannan's declarations were Sun TV's announcement in 2010 that they would be aggressively seeking to expand their business in the United States. (Docket Entry 53-5.) That is inconsistent with a company that "has no control over the companies that re-transmit the channels, or where the companies re-transmit the channels." (Kannan Declaration, ¶ 16.) Kannan's whole declaration has been put into doubt. Plaintiffs should be allowed to subject Kannan to cross-examination to untangle these inconsistencies and to

---

[4] Defendants incorrectly claim that Plaintiffs' argument is based on one part of the Annual Report saying that Sun TV operates television channels to viewers in the U.S., while another part of the Annual Report says that Sun TV's subsidiaries operate television channels to viewers in the U.S. (Opposition 15:26-16:4.) In actuality, the two sections of the Annual Report used different defined terms for who is operating the television channels to the U.S. In one section, the defined term only includes Sun TV, and in another section the defined term includes both Sun TV and its subsidiaries. (2012-13 Annual Report at 48, compared to 90.) Neither section says what Defendants claim: that only Sun TV's subsidiaries operate the stations to viewers in the U.S. The difference between these two sections of the annual report is not what creates the conflict with Kannan's Declaration. Both of these sections in isolation conflict with Kannan's Declaration.

determine whether there are other misstatements in his declaration (which was the only one filed on behalf of Sun TV).

Plaintiffs know that Sun TV "operates television channels in" the United States, but Plaintiffs are in the dark as to any additional details. It is far too early to say that Plaintiffs have no chance of obtaining general jurisdiction. So far, Plaintiffs know that (1) Sun TV "operates television channels" in the United States; (2) Sun TV operates a YouTube channel through Google, Inc. (a Delaware corporation headquartered in California) that has been viewed over 80 million times; (3) Sun TV has agents who make extortion-threats for them in California (Sheelum Declaration, ¶ 12); and (4) Sun TV has been attempting to expand their business in the United States since 2010 (Docket Entry 53-5).

Defendants claim that Sun TV already has the information it needs regarding its business activity in the United States. (19:21-20:13.) This is incorrect. Defendants know from publically available information that Sun TV is available to customers of Dish Network. But that is the full extent of Plaintiffs' knowledge. Plaintiffs are also unaware if Sun TV airs on any other satellite or cable providers.

Defendants state that Sun TV's contractual and business relationships with Global Media Management LLC and World Media Connect LLC (the two companies Sun TV partnered with in 2010 to expand Sun TV's business in the United States) are publically available. (Opposition 19:21-20:5.) But what is Plaintiff supposed to do with the publically available information? The articles of organization of these LLCs will not disclose the nature of their business relationships with Sun TV. One of the LLCs is in "delinquent" status. (Docket 55-3.) This "delinquent" status raises two issues: (1) that it would be very difficult to ever obtain information from this entity; and (2) whether or not these LLCs were ever fully operational, independent companies that offered substantial services to companies other than Sun TV.

In *Theo. H. Davies & Co., Ltd. v. Republic of Marshall Islands*, 174 F.3d 969, 974-75 (1998), the Ninth Circuit exercised general jurisdiction over foreign nationals

solely because they consistently purchased goods and services from American companies. Under *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1079 (9th Cir. 2003), the Ninth Circuit held that "even if the only contacts L.L. Bean had with California were through its virtual store, a finding of general jurisdiction [would be appropriate]." And L.L. Bean provides two additional parenthetical citations that are helpful to Plaintiffs: "(*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 572 (2d Cir.1996) (noting that extensive mail order and telephone sales alone could support general jurisdiction if sufficiently 'continuous and systematic.'); *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989) (finding pattern of continuous and systematic contacts sufficient for general jurisdiction given mail order solicitations to Michigan businesses and presence of at least one sale in Michigan every month for two years)." It cannot be said that Plaintiffs' position is hopeless under these cases. It is already known that in 2010 Sun TV took affirmative marketing and sales steps to do business in the United States, that Sun TV is broadcasting in the United States, that Sun TV runs a California YouTube channel that has been viewed over 80 million times, and that Sun TV has contractual relationships with United States companies in furtherance of business interests in the United States.

DATED: November 25, 2013

Respectfully Submitted,
MILLER BARONDESS, LLP

By: /s/ *Scott M. Lesowitz*
Erik S. Syverson
Steven T. Gebelin
Scott M. Lesowitz
Attorneys for Plaintiffs